**TARLETON-GASPARD v. MALOCHEE ET AL.**

—

(March 23, 1931. Opinion and Decree.)
(May 11, 1931. Rehearing Refused.)
(June 2, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

—

Milling, Godchaux, Saal & Milling (Robert E. Milling and Lawrence K. Benson, of counsel), of New Orleans, attorneys for plaintiff, appellee.

Arthur A. Moreno and Gordon Boswell, of New Orleans, attorneys for Mr. and Mrs. Leo B. Bisso, defendants, appellants.

Henry & Cooper and A. M. Suthon, of New Orleans, attorneys for Henry J. Malochee, defendant, appellant.

John D. Miller, of New Orleans, attorney for Buckmaster-Luck-Malochee, Inc., defendant, appellant.

HIGGINS, J. Mrs. Lula Tarleton-Gaspard brings this suit against Henry J. Malochee, Mrs. Leo B. Bisso, Leo B. Bisso, and Buckmaster-Luck-Malochee, Inc., in solido, claiming damages for personal injuries in the sum of $75,000, alleged to have resulted when Mr. Malochee, in attempting a avoid a collision with a Peerless seven-passenger sedan driven by Mrs. Bisso, drove his Buick sedan upon the sidewalk of the intersection of St. Charles avenue and Lowerline street, this city, where the plaintiff was standing, and crushed her against an oak tree. The accident occurred on the uptown-lake sidewalk on October 19, 1929, about 7 o'clock p. m.

Plaintiff alleges that Mr. Malochee was at fault in operating his car at a rate of speed in excess of that permitted by article 2, section 1, subsection 1, paragraph C, of the traffic ordinance of the city, No. 7490, C. C. S., hereinafter also referred to as the traffic ordinance, and also in that the brakes of the car were defective.

The petition also avers that the Buick car belongs to Buckmaster-Luck-Malochee, Inc., and was being operated by Mr. Malochee, its officer, agent, and employee, within the scope and during the course of his employment.

The allegation of negligence on the part of Mrs. Leo B. Bisso is that she violated article 1, section 1, subsection 7, paragraph D, of the traffic ordinance, by proceeding across the neutral ground of St. Charles avenue without bringing her car to a stop and sounding her horn, so as to give approaching automobiles an opportunity to stop.

The petition further charges that Leo B. Bisso is the owner of the car that his wife was driving, and that it was being operated as a family car, with his consent.

Plaintiff also alleges that the joint and concurrent negligence of the defendants was the proximate cause of her injuries, and that the case is one falling within the doctrine of res ipsa loquitur.

Mr. and Mrs. Bisso filed separate answers, each denying liability, and averring that Mrs. Bisso brought the Peerless sedan to a full stop on the neutral ground while the Malochee car was three-quarters of a block away, and that she had completed the turn into St. Charles avenue and had advanced nearly a half block when the Buick car crashed into the plaintiff, and further setting up that the accident resulted from the negligence of Mr. Malochee, first, in driving at an excessive rate of speed; second, in driving too near to the neutral ground on the wrong side of the roadway; third, in failing to maintain a proper lookout; and, fourth, in operating the automobile with defective and inadequate brakes.

Mr. Malochee denied liability, and averred that St. Charles avenue was a right of way street under the provisions of article 1, subsection A, paragraph 7, of the traffic ordinance; that he was operating his car in a careful and lawful manner; that the accident was caused by the failure of Mrs. Bisso to observe the provisions of article 1, section 1, subsection 7, paragraph D, of the ordinance, which required her to stop, sound her horn, and give approaching traffic an opportunity to stop, before obtaining a right of way to leave the neutral ground and enter the lake side roadway of St. Charles avenue; that the proximate cause of the accident was the negligence and carelessness of Mrs. Bisso in suddenly leaving the neutral ground and entering the roadway directly in front of Mr. Malochee's car, which compelled

him to sharply turn the Buick car to the right and run upon the sidewalk, injuring the plaintiff. Mr. Malochee further avers that he was using the car for his own personal purposes and not for any business of Buckmaster-Luck-Malochee, Inc.

Buckmaster-Luck-Malochee, Inc., admitted the ownership of the car, that Mr. Malochee, was its officer, but denied that he was using the car in the course of its business, and averred that he was upon an errand of his own, further defending on the ground that Mr. Malochee was without fault and that the accident was caused by Mrs. Bisso in suddenly driving from the neutral ground into the lakeside thoroughfare of St. Charles avenue, in violation of the city traffic ordinance.

The jury returned a verdict in favor of plaintiff and against all of the defendants in solido in the sum of $27,500. Motion for a new trial was overruled, and all of the defendants appealed.

The transcript is so voluminous that it is impracticable to narrate the evidence of the witnesses of the respective parties to the litigation. We shall, therefore, give our appreciation of the facts as we gather them, after a careful review of the record.

We are impressed with the sincerity and good faith of the witnesses in their effort to tell truthfully what they saw, but there are the usual discrepancies in their testimony, due to the fact, we believe, that they observed the events leading up to accident and the accident from different positions and under different circumstances.

While the plaintiff alleged a cause of action under the doctrine of res ipsa loquitur, particularly as against Mr. Malochee and Buckmaster-Luck-Malochee, Inc. (Mercer et al. v. Rosenblath, 156 La. 250,

100 So. 414; Dotson v. La. Central Lumber Co., 144 La. 78, 80 So. 205; Lykiardopoulo v. N. O. & C. R. Lt. & Power Co. et al., 127 La. 309, 53 So. 575, Ann. Cas. 1912A, 976; Scott v. Checker Cab Co., Inc., 12 La. App. 598, 126 So. 241; Olagues v. Pelican Ice Co., 11 Orl. App. 332; Hatcher v. Burlett et al., 11 La. App. 129, 119 So. 748; Bailey v. Fisher, 11 La. App. 187, 123 So. 166; Central Glass Co. v. Heiderich, 6 Orl. App. 336), in presenting her case in chief she produced evidence tending to show that St. Charles avenue is a boulevard with a neutral ground in the center, on which are located double street car tracks, and having paved roadways on each side, the riverside roadway being used by traffic going towards Canal street and the lakeside thoroughfare by vehicles going towards Carrollton avenue; that Lowerline street is paved and crosses St. Charles avenue at practically a right angle; that on the evening in question, while standing on the sidewalk on the uptown-lake corner of Lowerline street and St. Charles avenue, waiting for a friend who was expected to arrive on the St. Charles Belt street car going uptown, her attention was directed to an automobile moving uptown on the lakeside thoroughfare of St. Charles avenue, at an excessive rate of speed; that, as this automobile approached the intersection of Lowerline street, the lights of Mrs. Bisso's Peerless sedan, which was being driven on Lowerline street in the direction of the lake, flashed across the sidewalk into plaintiff's eyes, as it turned to the left in order to proceed up St. Charles avenue; that about the same time the lights from the Malochee car practically converged with those of the Bisso car, and in the next instant the Malochee car had swerved from about the lower side of the intersection of Lowerline street diagonally across the intersection, mounting the six-

inch curb of the sidewalk and crushing Mrs. Gaspard against a large oak tree situated several feet back on the sidewalk; that bystanders extricated her and summoned an ambulance, in which she was taken to the Charity Hospital for treatment.

The plaintiff's evidence further tended to show that Mr. Malochee was operating the Buick sedan at a rate of speed in excess of 25 miles an hour, which was the maximum speed allowed by the city traffic ordinance, and that the brakes of the Buick car were defective; and that, as far as the Bisso car was concerned, the driver of it had failed to observe the provisions of another section of the ordinance which required Mrs. Bisso to stop her car and blow her horn in order to warn approaching automobiles, thus affording them an opportunity to stop, before she could gain the right of way to leave the neutral ground to cross the street or turn into it. In short, the plaintiff made out a prima facie case of joint and concurrent negligence as against the defendants.

Mr. Malochee then offered, besides his own, the testimony of several witnesses, two of whom saw the accident, tending to show that he was operating his car at a rate of speed not in excess of thirty miles an hour; that he observed the Bisso car as it slowly entered and crossed the neutral ground of St. Charles avenue, when he was about a half block from it; that he did not retard his speed because he felt that the Bisso car would stop at any moment, and that he was within 15 feet of it when he realized it was not going to stop; that he first attempted to sway to the left, and then suddenly swerved to the right, in an attempt to avoid striking the Bisso car, which had just about completed the turn; that, as a result of the

sudden appearance of the Bisso car in front of him, it was necessary to pull sharply to the right, and, before he could stop or turn into Lowerline street, his car mounted the sidewalk and injured the plaintiff; that the Bisso car was solely at fault; and that the negligence of its driver was the sole proximate cause of plaintiff's injuries.

The witnesses in behalf of Mr. and Mrs. Bisso, including themselves, consisted of several members of the family and one young lady friend, all of whom were passengers in the Peerless car, excepting Mr. Bisso. They testified that Mrs. Bisso had gone to the home of her parents, as it was her custom to drive them to a picture show; that as she came out Lowerline street, approaching St. Charles avenue, she slowed down, and, seeing there was not any traffic coming down St. Charles avenue, proceeded to cross its riverside thoroughfare and enter the neutral ground; that she then stopped, looked down St. Charles avenue and saw the lights of the nearest automobile about a half or three-quarters of a block away; that, believing that she had time in which to make the turn, she proceeded into the lakeside roadway of St. Charles avenue, and, after having gone, as some of the witnesses estimate, a half block, and others, about sixty feet, up the avenue, they were attracted by a loud crash and screaming in the rear of them; that Mrs. Bisso pulled to the right, stopped, and backed to the scene of the crash, where she, her mother, father, and sister left the car and went to the scene of the accident; that, after the accident, Mrs. Bisso was so unnerved that she had to get her husband to drive the car home; that the Malochee car was proceeding at an excessive rate of speed; and that if it had been operated lawfully,

Mrs. Bisso would have had ample time within which to make the turn so as not to interfere with the Malochee car; and that Mr. Malochee was solely at fault in causing the accident.

It is clear that Mrs. Gaspard has a cause of action against either Mr. Malochee or Mrs. Bisso, or both of them, as she was standing on the sidewalk where she had a lawful right to be, and therefore was without any fault whatsoever. Taking into consideration the evidence of both the plaintiff and that of the Bissos, there is no doubt that it preponderates to the effect that Mr. Malochee was operating his car at an excessive rate of speed, and was therefore violating the following provision of the traffic ordinance:

"Speed limits on the streets, avenues, highways and roadways in the City of New Orleans shall be as follows: * * *
"(c) Twenty-five Mile Zone. All right-of-way neutral ground streets, Spanish Fort road and West End Shell Road."

While it is true that under another provision of the traffic ordinance St. Charles avenue is a right of way street over all intersecting right of way streets, that fact does not absolve Mr. Malochee from using due care and caution to avoid injuring those who approach intersections from the less favored streets. His own testimony convinces us that he knew, or should have known, that the driver of the Bisso car was not observing the provisions of the traffic ordinance which required her to stop on the neutral ground and blow her horn so as to give approaching vehicles an opportunity of stopping. When Mr. Malochee was fifty or sixty feet away from the Bisso car, it continued to cross the neutral ground and proceeded to turn into the roadway of St. Charles avenue. Yet he continued on his course and made no effort to slacken his speed, believing that the Bisso car would have time to straighten out to afford him an opportunity of passing it. His judgment of the distance proved to be erroneous. It was his own negligence and carelessness in operating his car at an excessive rate of speed, and not placing it under proper control after observing the Bisso car was not going to stop, that contributed to the creation of a situation of imminent danger to the occupants of the Bisso car and himself, thereby necessitating his sudden swerving to the right to avoid a collision with the Bisso car and resulting in his driving on the sidewalk and injuring plaintiff. We therefore find that he was at fault.

We next pass to a consideration of whether the driver of the Bisso car was at fault. Again we observe, taking the testimony of the witnesses of the plaintiff and Mr. Malochee into consideration, that the preponderance of the evidence tends to establish that the Bisso car merely slowed down as it crossed the neutral ground, but did not stop. It is admitted that the driver of the Bisso car did not sound the horn. Her counsel seek to excuse this fault on the ground that, as the Malochee car was one-half or three-quarters of a block away, it was unnecessary to sound the horn, but we are satisfied that, at the time the Bisso car left the neutral ground and attempted to turn into St. Charles avenue, the Malochee car was not that far away, because, if it had been, there is no doubt that the Bisso car would have completed the turn and there would not have been any accident. We are of the opinion that it was the presence of the Bisso car in the path of the Malochee car that caused Mr. Malochee to suddenly swerve to the right and run upon the sidewalk. It is shown that the lakeside driveway of St. Charles avenue is 22 feet and 11 inches in width. The length of the Peerless sedan

of Mrs. Bisso is 16 feet and 8 inches, and its width 5 feet 10 inches, so that, in making the turn, it is obvious that the Bisso car would practically block the entire roadway. We are quite convinced that the driver of the Bisso car misjudged the distance between the Malochee car and her own, and she frankly states, in her testimony, that, after observing the distance of the Malochee car and reaching the conclusion that she had ample time in which to make the turn, she dismissed the Malochee car from her attention altogether, and that, if the Malochee car had been moving at a lawful rate of speed, there would have been time for her to turn. Having failed to observe the provisions of the traffic ordinance by coming to a complete stop and sounding her horn to give approaching automobiles an opportunity to stop, which she was required to do in order to gain the right of way to enter St. Charles avenue, Mrs. Bisso was guilty of negligence. Not having the right of way, and seeing the other car approaching at an excessive rate of speed, she had no right to assume that it would stop to permit her to proceed, and thus driving out in front of an oncoming car under such circumstances was carelessness and negligence, which created a perilous situation, to avoid which the Malochee car ran upon the sidewalk where plaintiff was standing.

We have reached the conclusion that both drivers were guilty of carelessness and negligence, which jointly and concurrently was the proximate cause of the accident and injuries of the plaintiff. In this connection we quote the following from the syllabus of Shield v. F. Johnson & Son Co. et al., 132 La. 773, 61 So. 787, 47 L. R. A. (N. S.) 1080:

"If the concurrent negligence of two or more persons combined results in an injury to a third person, the latter may recover from either or all. 29 Cyc. 487; Holzab v. Railroad Co., 38 La. Ann. 189, 58 Am. Rep. 179; 38 Cyc. 458, 483, 488. "The doctrine of 'the last clear chance' has no application between two or more defendants as to one another, who are charged with concurring fault resulting in injury and damage to a plaintiff. 29 Cyc. 530; 36 Cyc. 1631; 38 Cyc. 456."

See, also, Scott v. Checker Cab Co., supra; Buckner v. Powers, 12 La. App. 630, 125 So. 744; Dunbar v. Kaul, 12 La. App. 605, 126 So. 705; Vance v. Poree, 5 La. App. 109; Breaux v. Cangelosi, 10 La. App. 765, 123 So. 151; Fisse v. Toye Bros. Auto & Taxicab Co. et al., 14 La. App. 70, 127 So. 756; Barrett v. Collins, 11 La. App. 384, 123 So. 176.

Taking up next the question of the liability of Buckmaster-Luck-Malochee, Inc., whom the plaintiff seeks to hold under the doctrine of "respondeat superior," plaintiff contends that, having shown that the automobile was owned by Buckmaster-Luck-Malochee, Inc., and that Mr. Malochee was the president of the corporation, and, since this is a case coming under the doctrine of res ipsa loquitur, the burden is upon the corporation to show it is free from fault, citing May v. Yellow Cab Co., Inc., 164 La. 920, 114 So. 836, and Johnson v. Jim Brownlee, Inc., 13 La. App. 86, 127 So. 127.

The evidence in this connection is that Mr. Malochee had driven to the Jesuits' Church, where he let his wife out, and proceeded up St. Charles avenue, in order to go to Eagle street to see a colored man, one of his domestic servants, who had failed to appear at his home for duty. It appears that this man was in no way connected with the affairs of Buckmaster-Luck-Malochee, Inc., and was Mr. Malochee's employee, and that he was on a mission of his own, which in no way concerned the corporation's interests. We are

of the opinion that Mr. Malochee was not upon the company's business at the time of the accident, but upon his private affairs, and that therefore the defendant Buckmaster-Luck-Malochee, Inc., is not liable. Griffin v. Motor Transit Co., 13 La. App. 151, 127 So. 438; Shearman and Redfield on Negligence (6th Ed.) sec. 147.

Passing to the question of the liability of Leo B. Bisso, we observe that the evidence shows that he was the owner of the Peerless sedan driven by his wife; that the car had been given to him by his father as a wedding present; that he had authorized his wife to use it as a family car; and that it was customary for Mrs. Bisso to drive her mother, father, and sister to the theater. Under the doctrine announced in the case of Paderas v. Stauffer, 10 La. App. 50, 119 So. 757, 120 So. 886, we are of the opinion that Mr. Bisso is liable, because his wife, under the circumstances, was his agent just the same as if she had been a family chauffeur. See, also, Durel v. Flach, 1 La. App. 758; Cohen v. Hill (Tex. Civ. App.) 286 S. W. 661; Plasch v. Fass, 144 Minn. 44, 174 N. W. 438, 10 A. L. R. 1446.

Finally, we consider the quantum of damages. The suit is for the sum of $75,-000, covering the following items, as alleged in paragraph 12 of the petition:

1. Permanent loss of left leg, making her a cripple for life; disfigurement; fracture of right ankle, leg and bruises, including the wrenching and possible fracture of right knee................$50,000
2. Physical shock, torture and suffering sustained, and which will continue in the future............... 15,000
3. Mental shock, pain, anguish and torment sustained, and which will continue in future...................... 10,000
                                                        _____
                                                       $75,000

The jury allowed $27,500. Plaintiff has answered the appeal and asked that the award be increased to the full amount prayed for, and the defendants contend that the verdict is manifestly excessive and should be reduced to a sum of not more than $7,500.

In the case of Rice v. Crescent City R. R. Co., 51 La. Ann. 108, 24 So. 791, 794, the Supreme Court said:

"It has never been the intention to fix by rule specific sums for different classes of injuries, nor for varying grades and duration of anguish and suffering. In this respect, each case is considered independently, on its merits, and on the state of facts peculiar to it, a due regard, however, being always had to the proper observance of a reasonable uniformity of jurisprudence on general lines."

Following this same line of thought, this court in Le Blanc v. Checker Cab Co., 8 La. App. 472, said:

"The sums awarded in these cases are not compensatory and are not standardized. While it may be said that some uniformity should be attempted, so many differences exist in apparently similar cases that little uniformity of award exists or, in the nature of things can be accomplished."

The record shows that plaintiff is a woman of 45 years of age, with a life expectancy of 24.54 years, under the American Experience Table of Mortality. She is married, and is the mother of several grown children. She has always enjoyed excellent health, was accustomed to performing all of her duties as a housewife, and enjoyed walking for exercise. We gather from the hospital report, medical testimony, and other evidence in the record, that Mrs. Gaspard was crushed by the front bumper of the Buick sedan against a large oak tree, terribly mashing and mutilating her left leg below the

knee. The fibula (one of the bones of the lower leg) of the right leg and the internal malleolus (the inside lower end of the tibia, or the other bone of the lower leg which forms the ankle) were fractured. Her right leg was also badly cut and bruised, which, together with the cast that was placed on her right leg, caused large ulcers, which were still visible at the time of the trial, seven months after the accident. Her right knee was also severely wrenched, causing large knots of fibrous substance, which were also present at the time of the trial. Plaintiff's left arm and wrist were severely wrenched, necessitating their being placed in splints, and causing them to be useless until January, 1930; their function being slowly regained through the application of heat. Her body and limbs were otherwise painfully injured because of multiple contusions and bruises.

The accident happened on October 19th, about 7 o'clock p. m., and within an hour she was removed to Charity Hospital, where her left leg was removed about five inches below the knee by a Guillotine operation. It was necessary to leave the wound open in order to pull the flesh and skin down over the end of the stump to cause proper healing. The weights used for this purpose were suspended by pulleys and remained in that position for about 54 days. The other leg was in a plaster cast, which was from time to time removed and replaced, as well as the splints on her left arm. The patient was in "an extreme state of shock," and it was necessary to give her transfusions on account of loss of blood. She entered the hospital on October 19, 1929, and was discharged on January 20, 1930, but was confined, at first, to her bed at home, and thereafter partially confined to her bed.

Even until the time of the trial she was required to use crutches with the assistance of some one to support her while using them.

When the cause was tried in the last week of May, 1930, it was shown that the break in the fibula of plaintiff's right leg had healed, but that the break in the internal malleolus had not, due to the interposition of soft parts of flesh between the bones. This appears to have caused plaintiff to have a traumatic flat foot and a shortening of the tendon Achilles, causing her to throw her foot out and limiting the upward movement of her foot. The duration of this condition is problematical.

Plaintiff was conscious during all of the extreme suffering and pain, which was of a most severe nature, and which she bore with such commendable fortitude and courage as to elicit the expressed admiration of all parties concerned. She is crippled and disfigured for life.

In the light of the jurisprudence of this state, we have concluded that the award of $27,500 is excessive, and that the verdict should be reduced to the sum of $15,000. Choppin v. N. O. & Carrollton R. R. Co., 17 La. Ann. 19; Lee v. Powell Bros. & Sanders Co., 126 La. 51, 52 So. 214; Nelson v. Vicksburg, S. & P. Ry. Co., 141 La. 475, 75 So. 212; Leininger v. N. O. Ry. & Light Co., 150 La. 1089, 91 So. 521; Shally v. N. O. Public Service et al., 1 La. App. 770; Babin v. Sewerage & Water Board, 2 La. App. 517.

For the reasons assigned, it is ordered that the judgment appealed from, insofar as it condemns Buckmaster-Luck-Malochee, Inc., be reversed, and it is now ordered that there be judgment in favor of Buck-

master-Luck-Malochee, Inc., defendant, and against Mrs. Lula Tarleton-Gaspard, plaintiff, dismissing plaintiff's suit at her cost.

It is further ordered that the judgment in favor of Mrs. Lula Tarleton-Gaspard, plaintiff, and against Henry J. Malochee, Leo B. Bisso, and Mrs. Leo B. Bisso, defendants, be amended by reducing the amount awarded from $27,500 to the sum of $15,000, and, as thus amended, it is affirmed.