**HOLDERITH et ux. v. ZILBERMANN et al.***
No. 14676.

Court of Appeal of Louisiana. Orleans.

Dec. 11, 1933.

Rehearing Denied Jan. 2, 1934.

*Writ of certiorari denied by Supreme Court February 26, 1934.

[redacted]

[redacted]

[redacted]

Edward Rightor, of New Orleans, for appellants.

H. W. & H. M. Robinson, of New Orleans, for appellees.

HIGGINS, Judge.

Mr. and Mrs. Harold K. Holderith brought this action ex delicto against the defendants in solido to recover damages for personal injuries sustained by their minor daughter, Rosemary Holderith, and Mrs. Holderith, and medical expenses, which are alleged to have resulted from an automobile collision between the Ford car of one of the defendants, in which Mrs. Holderith and her daughter were riding as guests, and a Lincoln touring car of the other defendant, at the intersection of Freret and Marengo streets, this city, on December 29, 1931, at 1 o'clock p. m.

The charges of negligence against the driver of the Ford car, Charles M. Vasterling, are that he drove his car down Freret street into the intersection of Marengo street, when it was obvious that the defendant Zilbermann's Lincoln car was approaching at such a reckless rate of speed that it would be unable to stop at the intersection, and that Vasterling did not keep a proper lookout.

The defendant Michael Zilbermann is charged with being at fault in driving his Lincoln car out Marengo street toward the lake as he approached Freret street at the rate of speed of 35 or 40 miles an hour, which is in excess of the rate of 20 miles an hour permitted by the city traffic ordinance; in failing to come to a complete stop before entering Freret street in violation of the said ordinance; in failing to keep his car under proper control; and in failing to keep a proper lookout.

Defendant Zilbermann answered, denying that he was in any way at fault, and averring that he came to a full and complete stop at the intersection of Freret street, and that, as he started into the intersection, defendant Vasterling, operating his car at the illegal and reckless rate of speed of more than 30 miles an hour, without keeping a proper lookout, and failing to slow down as he approached the intersection, ran into the left front side of the Lincoln car, and that the defendant Vasterling was solely at fault in causing the accident.

Defendant Vasterling answered, denying that he was guilty of negligence, and averred that the sole cause of the accident was the carelessness of the defendant Zilbermann; that "as he (Vasterling) drove down Freret Street and approached Marengo Street he slowed up, but did not stop, looked and saw no car coming, then proceeded at a rate of about 15 miles an hour; that he started across the street and did not see any one coming; that he was about half-way across Marengo Street when his said sister, plaintiff herein, called his attention to a car which was coming from the right on Marengo Street; that defendant noticed that the said car was coming very fast, but did not worry about it because the said car could easily have avoided your defendant's car; that your defendant first started to worry about the said car when it was about 30 feet away and he heard the brakes of said car; that your defendant tried to speed up to get out of his way and turned his wheels to the left; that at this time the rear of defendant's car was about in the center of Marengo Street, or a little past the downtown side of the street; that said car came right on and struck defendant's car on the right rear wheel and turned it over on its left side."

Defendant Zilbermann later filed a plea in bar on the ground that he had been released from the claim, which was listed in his schedules, by virtue of his discharge in bankruptcy. When the case was called for trial on the merits, this plea was brought up, and counsel for plaintiff stated that it was his opinion that under the law, as the tort was not a malicious or willful one, the discharge in bankruptcy had the effect of releasing Zilbermann from the claim under section 17 of chapter 3 of the Bankruptcy Statute (11 USCA § 35). Counsel for defendant Vasterling opposed the dismissal of Zilbermann from the case, stating that it was his appreciation of the law that a discharge in bankruptcy released the tort-feasor only when the claim is reduced to a judgment. The trial court ruled, as the attorney for the plaintiff stated he would not contest the correctness of the position of the attorneys for Zilbermann, that he dismissed Zilbermann from the case without prejudice to the defendant Vasterling's rights.

The case was then tried before a jury against the defendant Vasterling alone, and resulted in a verdict in favor of Rosemary Holderith for $10,000 for damages for personal injuries; in favor of Mrs. Harold K. Holderith for $250 for damages for personal in-

juries; and in favor of Harold K. Holderith for $1,058.55, representing medical expenses. Defendant has appealed.

The record shows that Marengo street is a paved thoroughfare 36 feet in width, running from the river toward the lake. Freret street is paved, having double street car tracks located upon it and runs from up town to down town, intersecting Marengo street at right angles. Defendant Zilbermann was driving a Lincoln touring car on Marengo street in the direction of the lake, and defendant Vasterling was driving a Ford tudor car down Freret street. Mrs. Holderith was seated next to Mr. Vasterling, who was her brother, Mr. Vasterling's minor daughter was sitting on the back seat immediately in the rear of her father, and Rosemary Holderith on the back seat behind her mother. The Zilbermann car was on its right side of the street several feet from the gutter curbing, and the Vasterling car was on the river side street car tracks. Neither driver sounded his horn. The two cars collided toward the downtown side of the intersection, the right rear wheel and fender of the Ford striking, or being struck by, the left front fender of the Lincoln car. The Ford came to rest on Freret street about 15 or 20 feet from the downtown property line, after having turned over, and pinned Rosemary under it. The Lincoln machine stopped on the downtown river side of the intersection, with a portion of the car resting on the sidewalk and the balance of it in the street.

The defendant Zilbermann and H. A. Germann, who was summoned by Zilbermann, and who stated that he was driving his car in the rear of Zilbermann's automobile, were placed on the stand by the plaintiff as witnesses. They testified that Zilbermann came to a full stop at Freret street in order to permit two street cars that were passing to go by, and that, as he entered the intersection, the Ford was driven at a very fast rate of speed into the Lincoln car. Zilbermann says that, although he looked, he did not see the Ford car until it was immediately upon him.

Mrs. Holderith, who was riding in the Ford car, testified that her brother invited her to go with him down town to perform an errand for his daughter; that he had been driving down Freret street about 25 miles per hour, conversing with her, and, as they approached Marengo street, he slowed down, but did not stop; that, as they entered the intersection, she called his attention to an automobile which was approaching from their right at a very rapid rate of speed; that it did not stop or slow down, but came at a very fast rate of speed; that her brother then attempted to accelerate his car, and swerved it to the left in order to avoid the collision, but failed to do so.

Plaintiff also placed on the stand other witnesses who came upon the scene after the accident, and who testified as to the respective positions of the machines and their efforts to assist in releasing the child from under the Ford car.

The defendant Vasterling gave substantially the same testimony as his sister, Mrs. Holderith. He stated that, as a driver leaves the upper property line of Marengo street, while driving down Freret street, he is able to see out Marengo street toward the river for a distance of more than a half block; that he looked in that direction as he entered the intersection, but did not see the Lincoln car; that he then looked straight ahead and pursued his course; that, as he reached about the center of the intersection, his sister called his attention to the presence of the Lincoln car; that he then gave a quick side glance, saw it, heard the brakes, and then attempted to accelerate his car and turned to the left in order to avoid the collision; that the Lincoln car was approaching at about 35 or 40 miles an hour; and that he was going between 15 and 20 miles an hour across the intersection.

Two police officers, who arrived after the accident, testified as to the presence of skid marks on Marengo street for a distance of about 30 feet from Freret street toward the river.

Henry Reed, a peddler, who was driving a wagon out Marengo street, testified that the Lincoln car did not stop at Freret street, but drove past him and into the intersection at a fast rate of speed.

Since Zilbermann was dismissed from the case, it is unnecessary for us to express any opinion as to whether or not he was at fault. We are concerned only with the question of whether or not defendant Vasterling was guilty of negligence which contributed to the accident. If any act of carelessness on his part was a contributing cause of the collision, he is liable; otherwise he is not liable.

Counsel for defendant vigorously attacks the testimony of Zilbermann and Germann as being false and untrue because they both state that they were casual acquaintances, whereas the records in the bankruptcy court show that they mutually indorsed each other's notes for substantial amounts. He further argues that we should not give any weight and effect to their testimony because they were partisan in favor of the plaintiff as a result of Zilbermann being unnecessarily and without sound legal ground dismissed from the suit with the consent of the plaintiff.

Eliminating and disregarding their testimony in toto, as suggested by the defendant, a view most favorable to him, but without expressing our views on the issues presented thereby, let us consider the testimony of Mrs. Holderith and Mr. Vasterling in determining whether he was free from fault. It is not suggested by counsel for defendant, who admittedly represents the insurance carrier, that

there has been any collusion, fraud, or effort upon the part of these parties to mulct the company in damages.

▮ Vasterling admits that he looked out Marengo street in the direction of the river, but did not see the Lincoln car. His view in that direction was unobstructed for more than a block. His sister, who was seated next to him as a guest, looked and did discover the Lincoln approaching the intersection at high speed. If Vasterling had looked in the manner required by law of an ordinarily prudent driver, he likewise would have seen the Lincoln car, because there is not any doubt that it was there. He estimates that it was traveling at a rate of speed of about 35 or 40 miles an hour, and that he was traveling between 15 and 20 miles an hour. Even under those circumstances it is clear that the Lincoln car was somewhere within the half block of which the defendant Vasterling admits that he had clear view. This court and other courts have repeatedly held that to look or glance and not see an approaching car is equivalent to not looking. While it is true that the defendant Vasterling had the right of way under the traffic ordinance, neither the provisions of the traffic ordinance nor the general rules of negligence relieved him of the duty of maintaining an adequate lookout. In other words, the right of way granted by the city traffic ordinance is not an unconditional and absolute right of way. Section 7, article 1, and article 2, Traffic Ordinance No. 7490 C. C. S.

In Thomas v. Roberts (La. App.) 144 So. 70, 71, plaintiff sued the defendant claiming property damages alleged to have been sustained in a collision with the defendant's truck. The plaintiff's automobile was proceeding up St. Charles avenue, and the defendant's truck was going toward the lake on Louisiana avenue. The traffic light was against plaintiff's car, and it was brought to a stop. When the green light showed in favor of traffic moving up St. Charles avenue, the plaintiff's automobile was driven into the intersection and came into collision with the defendant's truck about 10 feet after starting. In denying recovery to the plaintiff, we said:

"There seems to be no doubt that the truck was proceeding at an excessive speed and that it entered the intersection after the traffic light facing it had turned to red. The driver was therefore negligent, both in the matter of speed and because of his violation of the ordinance, which requires that vehicles shall come to a stop at intersections guarded by lights when the lights showing towards them are red.

"It is very evident, however, that plaintiff's son did not look for the approach of any other vehicles in the roadway crossing his path, and that had he done so he would have seen the on-coming truck and would not have driven his car in front of it. Counsel for plaintiff has interestingly and mathematically shown that the truck of defendant entered the intersection after the light was 'against' him, but all his ingenuity is unable to convince us that the accident could not have been averted had plaintiff's son exercised reasonable care. True enough he had no reason to presume that any one else was acting in violation of a safety ordinance. Still he was at fault in relying entirely on the drivers in the cars to the left of him to see if the roadway was clear. His desire to pass them and to lead them up the avenue was the proximate cause of the collision. The drivers of both cars to his left saw the truck coming, and the driver of a third car, which was behind his car, also saw the truck, and we are of the opinion that the action of plaintiff's son was plainly negligent."

In the case of Gibbens v. N. O. Terminal Co., 159 La. 347, 105 So. 367, 368, the Supreme Court said: "The rule of law is that a person is held to have seen that which he could have seen and should have seen."

In Murphy v. Star Checker Cab, Inc., 150 So. 79, 81 (La. App., Orleans Cir.), where the plaintiff admittedly had the right of way, in denying him recovery we said:

"The rule which is applicable is well expressed in Kerns v. Lewis, 246 Mich. 423, 224 N. W. 647, 649, in which the Supreme Court of Michigan said:

"'While the law accords the right of way, it requires, as well, the exercise of at least "horse sense." The statute does not authorize one, in approaching a highway crossing, to assume that in all events he may proceed without looking, or, if unable to see, without exercising precaution commensurate with reasonable prudence.'"

It might well be that Zilbermann was guilty of negligence which contributed to the accident, but we conclude that Vasterling's failure to keep a proper lookout was a contributing cause. Tarleton-Gaspard v. Malochee et al., 16 La. App. 527, 133 So. 409; Fisse v. Toye Bros. Auto & Taxicab Co. et al., 14 La. App. 70, 127 So. 756; Scott v. Checker Cab Co., 12 La. App. 598, 126 So. 241; Buckner v. Powers, 12 La. App. 630, 125 So. 744; Dunbar v. Kaul, 12 La. App. 605, 126 So. 705; Barrett v. Collins, 11 La. App. 384, 123 So. 176; Breaux v. Cangelosi, 10 La. App. 765, 123 So. 151; Vance v. Poree, 5 La. App. 109; Pugh v. Henritzy et al., 151 So. 668 (of this court) this day decided; Shield v. F. Johnson & Son Company et al., 132 La. 773, 61 So. 787, 47 L. R. A. (N. S.) 1080.

▮ As to the quantum, Mrs. Holderith sustained a cut on her left leg below the knee, which required three sutures, leaving a 2-inch scar. She also suffered general contusions of the body. The amount of $250 awarded is very reasonable and is approved.

The medical expenses amounting to $1,058.-55 awarded Mr. Holderith were adequately proven.

As a result of the child being pinned beneath the Ford car, she was seriously, permanently, and painfully injured. Two of her ribs on the left side were fractured, both forearms and hands were severely lacerated, the left foot, the upper arms, and the ribs were lacerated and· bruised. She also sustained a rupture of the perineum, i. e., the soft tissues between the thighs surrounding the opening of the rectum and the vaginal canal, extending so deeply into the body that the bottom of the wound could not be reached by probing with a long forceps. She was placed under an anesthetic, the wound was explored and sutured around the edges and packed with gauze. She also suffered a compound fracture of the right pubic bone, with severe tearing of the adjacent tissues. She was confined in plaster of paris casts for more than a year, and underwent a cystoscopic examination because of the development of pus in the kidneys, or pyelitis. Later an infection of the soft tissues and the joint of the hip bone developed, attended with extensive drainage of pus, resulting in osteomyelitis. The disease caused atrophy of the bone, resulting in the dislocation of the hip joint, with the result that the hip bone attached itself at a higher point, forming a rigid union and causing the leg to be 2 inches shorter. The child suffered excruciating pain for a considerable period of time and was seriously shocked. She is permanently crippled, and it is problematical as to whether she will ever be able to bear children. The jury allowed the sum of $10,000, the amount claimed, and we believe that this amount is not excessive.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.