## DOWNEY v. DITTMER.

### No. 14700.

Court of Appeal of Louisiana. Orleans.

Jan. 2, 1934.

Luke Cutrera, of New Orleans, for appellant.

Bnj. Y. Wolf, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit for damages. Plaintiff alleges that her injuries were caused by the negligence of defendant, the owner and driver of a Pontiac automobile, which was in collision with a Chevrolet car in which plaintiff was riding as a guest passenger of the owner, Gregorio Lo Coco.

The Chevrolet owned by Lo Coco and in which plaintiff occupied the seat alongside the driver had proceeded down Galvez street. to Canal street. It was the purpose of its occupants to cross Canal street in a downtown direction and to continue down Galvez street. The Pontiac was on the lower side of Canal street, proceeding in the direction of Lake Pontchartrain. The streets intersect at right angles. The Chevrolet, thus, was approaching from the left side of the Pontiac.

It is charged by plaintiff that defendant was negligent in that he was driving at an excessive rate of speed, and in that, after the Chevrolet, in an endeavor to cross, had entered the roadway ahead of him, there was yet time within which he could have stopped the Pontiac. It is also asserted by plaintiff that defendant, even if he could not have stopped his car, could have swerved it to the left and passed behind the Chevrolet.

Still another charge of negligence made against defendant in a supplemental petition is that he was physically unable to properly operate an automobile because he "was at the time of the accident * * * in a crippled condition in both legs, or paralyzed in both legs."

Defendant, after denying all the charges of negligence, avers that the proximate cause of the accident was the failure of Lo Coco, the driver of the Chevrolet in which plaintiff was a passenger, to accord to defendant's Pontiac the right of way to which, under the traffic ordinances of the city of New Orleans, it was entitled; it being asserted that the former was not brought to a stop on the neutral ground of Canal street before it was permitted to emerge into the lower side roadway of that street in an endeavor to cross ahead of the on-coming Pontiac.

Defendant further charges that Lo Coco, the driver of the Chevrolet, was negligent in that he had not procured a driver's license which, under the traffic ordinances

of the city of New Orleans, all automobile operators are required to obtain from the traffic authorities.

Defendant concedes that the negligence of Lo Coco, if he was negligent, cannot be imputed to plaintiff, but contends that plaintiff was negligent on her own part in not suggesting to Lo Coco that he stop on the neutral ground to afford an opportunity to the Pontiac to pass, and he maintains that, even if it appears that he (defendant) was in any way negligent, nevertheless the contributory negligence of plaintiff herself, in not warning Lo Coco, should bar recovery by her.

The judge a quo dismissed plaintiff's suit, and she has appealed.

Canal street at that point consists of two wide driveways with a neutral ground in the center. On the neutral ground are street car tracks. It is one of the main thoroughfares of the city.

Counsel for both parties call attention to the traffic ordinances of the city, and there seems to be some doubt in their minds as to whether the applicable ordinance is No. 13,702, which became effective in May, 1932, or No. 7490, which was the prior ordinance and which became effective in August, 1923. Since the accident complained of occurred on January 20, 1933, Ordinance No. 13,702, C. C. S., is plainly the one which controls here.

In the present ordinance, as in the former one, it is provided that drivers of vehicles which cross streets such as Canal street, which has a neutral ground and street car tracks, should bring their vehicles to a stop on the neutral ground and should give warning to the drivers of the approaching vehicles so that the approaching vehicles may be stopped and the crossing vehicles afforded opportunity to enter or cross the roadway. This is provided in the present ordinance in paragraph b of section 10 of article VI, which reads as follows:

"On streets and avenues having neutral grounds and carrying street car lines, vehicles crossing such neutral grounds shall have right of way to complete the crossing of the roadway of such street or avenue under the following conditions:

"Provided the vehicle shall come to a full stop when about to leave the neutral ground and enter the roadway, shall signal with horn, and give opportunity for approaching vehicles in the roadway to come to a stop, it being the intention of this provision to require vehicles in said roadway to stop upon receiving reasonable warning in order that vehicles standing on the neutral ground shall be permitted to complete the crossing of or turning into the roadway."

It is conceded that the Chevrolet was not brought to a stop while it was on the neutral ground before it entered the lower side driveway of Canal street, and it is also admitted that its horn was not sounded.

Failure to bring it to a stop and sound its horn was negligence on the part of Lo Coco. In Bannon v. Picou, 15 La. App. 511, 132 So. 390, we said: "As we have so often said, a motorist who is crossing a street like Canal street should, when he is on the neutral ground, bring his car to a stop, sound his horn, and afford to vehicles approaching on the driveway he intends to enter an opportunity to stop. See Williams v. Lenfant, 15 La. App. 515, 131 So. 857. See, also, Dunbar v. Kaul, 12 La. App. 605, 126 So. 705; Breaux v. Cangelosi, 10 La. App. 765, 123 So. 151." ·

We also said, in Smith's Tutorship v. Perrin, 145 So. 685, 688: "We experience little difficulty in coming to the conclusion that the driver of the Ford car was guilty of gross negligence and carelessness in failing to obey the provisions of the traffic ordinance, which required him to stop on the neutral ground and sound his horn so as to give approaching vehicles an opportunity of stopping."

Though both of the next above cited cases were decided while the earlier ordinance, No. 7490, was in effect, nevertheless the principles announced are applicable here because that ordinance contained the same provision which is quoted above from the later ordinance.

But the negligence of the driver of an automobile is not to be imputed to a guest passenger, for we said in the same case: "As the negligence of the driver thereof cannot be imputed to the plaintiff, who was riding as a guest, the defendant will be liable in damages to her if the evidence in the case shows that the defendant was guilty of concurrent or joint negligence which proximately contributed to the accident. Williams v. Lenfant, 15 La. App. 515, 131 So. 857; Tarleton-Gaspard v. Malochee, 16 La. App. 527, 133 So. 409."

It thus becomes necessary that we carefully search the record in an effort to determine whether there was in defendant any fault without which the accident would not have occurred because, if there was such fault, there could, in the absence of contributory negligence in plaintiff, be recovery against either or both of the automobile drivers, since, if both were at fault and if the faults of both contributed to the result, they would be held solidarily liable as joint tortfeasors.

Lo Coco testified that he found it unnecessary to stop before leaving the neutral ground because, when he was about to leave it, he looked, and, though he saw defendant's car approaching, it was so far away that he apprehended no danger from it.

Defendant, on the other hand, declares that, knowing of the ordinance on the sub-

ject and anticipating that Lo Coco knew the law and would obey it, he judged that he could clear the intersection while Lo Coco's car was stopping on the neutral ground, but that, when he was only about 30 feet from the point of the subsequent impact, he realized that Lo Coco did not intend to stop on the neutral ground and that Lo Coco's car suddenly emerged into the roadway ahead when it was too late to stop. He states that he attempted to swerve to his left so as to pass around the rear of the other car, but that he could not do so and was unable to avoid striking it on the right rear wheel.

■ Since the judge a quo found in favor of the defendant, we assume that he reached the conclusion that a reasonably prudent and experienced driver could not have stopped in time to avoid striking the crossing car, and we find nothing in the record which would justify a reversal of this finding of fact.

Counsel for plaintiff stoutly maintains that each of the cases mainly relied upon by defendant can be distinguished in point of fact from the case at bar. The Bannon Case differs, it is contended, in that there defendant's car, which was on the neutral ground street, was struck by the car which had emerged from the said neutral ground, whereas here it was defendant's car which struck that in which plaintiff was riding. Our attention is called by counsel for plaintiff to the following statement in our opinion in that case:

"* * * There can be no doubt that the Buick crashed headlong into the Ford and not the Ford into the Buick. * * * Had the Buick stopped even momentarily while it was on the Canal street neutral ground, the Ford would have passed safely ahead of it, and no accident would have resulted."

The Smith's Tutorship Case is said to differ from this, in that there the car of defendant, which was proceeding parallel to the neutral ground, was very near thereto, and that therefore the car crossing the neutral ground, when it emerged therefrom, was immediately struck, whereas here the crossing car had traversed at least half of the driveway, which, so counsel argues, shows that, while it was traveling that distance, there was time for defendant to see and appreciate the danger and to stop his car. The two cases differ slightly in point of fact from the case before us, each in the particular mentioned. But we find that in each of them there is a difference from this case of only an infinitesimal fraction of time and that the important question involved is whether a reasonably careful and ordinarily prudent and experienced operator of an au-

tomobile would have had time to appreciate the danger and to take the necessary steps to avoid it.

■ We do not think that an application of that test here would produce a result unfavorable to defendant. While it is possibly true that an automobile traveling at the rate at which the Pontiac was being driven could be stopped within 30 feet if the driver had been previously warned that he would be required to make such a stop, we believe that such is not always the proper way to determine whether any particular stop should or should not have been made. No one can be required to act in an unexpected emergency with the same promptness and precision which he should evidence if apprised in advance that he is to be subjected to a test. In Pyaette v. N. O. Public Service, Inc., 10 La. App. 300, 120 So. 483, 485, is found a case in which it was argued that a motorman should have appreciated danger to a small boy attempting to cross the track ahead of his car, and that, had he done so, he would have been able to stop the car a foot or two before it reached the point at which the boy intended to cross. We said: "* * * Conceding that the boy's actions were such as to give intimation of his intention to cross, this would have added only about one second more within which the motorman should have acted and, to have avoided the accident, would still have required more than human alertness and attentiveness."

If the evidence had shown that the speed of defendant's car was excessive and that he would have been able to stop the car had the speed been moderate, we would, of course, have held him liable. But the record shows no such excessive speed on his part.

The charge that defendant's legs were paralyzed and that he was thus physically unable to properly operate an automobile is not sustained by the record. On the contrary, it is shown that, though he had been injured some time before in a railroad accident, there was nothing whatever the matter with his legs at the time of the accident, and it is also shown that when he applied for and was granted his driver's license he was subjected to a rigid test and examination before it was granted him.

Since we find that there was no negligence in defendant and that therefore there can be no recovery by plaintiff, it is unnecessary that we discuss the evidence with reference to whether or not plaintiff herself was negligent in failing to warn the driver of the car in which she was riding.

The judgment appealed from is affirmed.

Affirmed.