**TYMON v. TOYE BROS. YELLOW CAB CO.***

No. 16679.

Court of Appeal of Louisiana. Orleans.

May 2, 1938.

*Rehearing denied May 30, 1938.

Legier, McEnerny, & Waguespack, of New Orleans, for appellant.

A. D. Danziger, of New Orleans, for appellee.

McCALEB, Judge.

This is a suit for damages wherein the plaintiff seeks to recover for personal injuries she received on March 4, 1935, when, while standing upon the sidewalk of Tulane avenue near its intersection with South Tonti street in the city of New Orleans, she was run into and knocked down by a taxicab owned by the defendant company, which was being operated by its employee acting within the scope and course of his duties.

The defendant admits the happening of the accident, but avers that it is free from liability in the premises as the sole and proximate cause of the plaintiff's injuries resulted from the fault and negligence of the driver of an unknown automobile who, while attempting to pass the taxicab from the rear, struck it on its left side and caused it to be shunted onto the sidewalk where it collided with the plaintiff.

The case proceeded to trial on these issues of fact and resulted in a judgment for the defendant. Plaintiff has appealed.

The scene of the accident is the downtown riverside banquette of Tulane avenue near its intersection with South Tonti street. This avenue is one of the main

thoroughfares of the city of New Orleans for automobile and street car traffic. It extends from the direction of the Mississippi river towards Lake Pontchartrain and is a two-way paved street separated by a neutral ground. The downtown side of the vehicular roadway is 21 feet, 8 inches wide, and abutting the neutral ground thereof, near the riverside intersection of South Tonti street, there is erected therein a concrete platform which is used by passengers boarding or alighting from street cars. It is commonly called a "safety zone" or "island." The main portion of it is 3 feet wide and about 50 feet long, and it connects with a triangular extension which is about 20 feet long. The obstruction stands 6½ inches above the level of the roadway, and because of its presence, the width of the street is narrowed to 18 feet 4 inches at this point for a distance of approximately 50 feet.

The accident occurred during the Carnival season on March 4, 1935, at about 11:30 p. m. The plaintiff, a woman 67 years of age, together with her two sons, her two daughters-in-law, and two of her grandchildren, was standing on the sidewalk of the downtown riverside corner of Tulane avenue approximately 3 feet from the curbing separating the street from the vehicular roadway and about 25 feet from the intersection of South Tonti street. The group had congregated at this point to wait for a Tulane Belt street car which plaintiff's son, William Tymon, his wife and two childen, intended to board. While they were thus positioned, a taxicab, owned and operated by the defendant company, was proceeding on the downtown side roadway of Tulane avenue in the direction of Lake Pontchartrain. As the cab arrived at a point variously estimated between 40 to 70 feet from the South Tonti street intersection, it mounted the street curbing onto the sidewalk and ran into the plaintiff and one of her daughters-in-law, knocking them down and injuring them. The taxicab, upon striking the plaintiff, did not, or was unable to, stop immediately and it finally came to rest somewhere in the intersection of South Tonti street.

■ It is obvious, from a mere statement of the collision, that the doctrine of res ipsa loquitur applies and that the fact that the taxicab left the roadway in which it was traveling and struck the plaintiff upon the sidewalk, where she had a right to be, is a strong indication of negligence on the part of its operator. It therefore follows that the burden of proof was cast upon the defendant to demonstrate, by a preponderance of evidence, that it was without fault in the premises. See Tarleton-Gaspard v. Malochee, 16 La.App. 527, 133 So. 409; Bailey v. Fisher, 11 La.App. 187, 123 So. 166; Scott v. Checker Cab Co., Inc., 12 La.App. 598, 126 So. 241; and other cases.

■ The defendant here concedes that it was incumbent upon it to show that the accident did not occur through its negligence and it maintains that the proof in the record establishes the fact that its taxicab was struck on its left side by an automobile which approached suddenly from the rear and attempted to pass the cab at a high rate of speed; that the driver of this car ran away without making his identity known; and that the impact came without warning and was of such violence as to cause the cab to be knocked onto the sidewalk and into the plaintiff.

Plaintiff, on the other hand, asserts that the evidence tendered by the defendant is not sufficient to overcome the presumption that the accident happened through its fault, and she further contends that the testimony submitted by her abundantly demonstrates that the driver of the cab, in attempting to pass an automobile traveling ahead of it, on the right (or wrong) side, lost control of the vehicle.

Since the burden of proof rested upon the defendant to excuse itself from liability, we consider, first, the evidence tendered in support of its defense.

Callahan, the driver of the cab, testified that, some time between 11:00 and 11:30 p. m., he picked up four passengers at the Roosevelt Hotel and was directed by them to drive to a residence on Carrollton avenue. He says that he proceeded out Tulane avenue on the right side of the downtown roadway at a speed not exceeding 20 miles per hour; that, as he approached the intersection of South Tonti street, a car, suddenly and at a high rate of speed, came from the rear and attempted to pass him; that, as it did so, it struck the cab on the left side with such violence that it knocked the steering wheel out of his hands for a moment and caused the cab to hurdle the street curbing and run upon the sidewalk. He further states that he had previously seen the plaintiff and her

family standing on the corner; that he applied his brakes and did everything within his power, after being struck by the automobile, to regain control of the cab, but that, notwithstanding, he was unable to avoid the accident.

The testimony of Callahan is supported for the most part by the statements of Mr. and Mrs. E. H. Lott, Mr. Gene Quaw, and Mrs. Cornelia Moore, who were passengers in the taxicab.

Mr. Lott, a Professor of Sociology at Louisiana State University (whose testimony was taken out of court), related the incident as follows:

"Q. Now Mr. Lott, will you please state in your own way your recollection of what happened on this trip?

"A. Well, the essential facts, as I remember them, are very simple. We proceeded from the Roosevelt Hotel where we took the cab towards Carrollton Avenue, the home of Mrs. Moore, and as we were going along this street—I didn't know the name of the street but I was afterwards told it was Tulane Avenue—we were proceeding at a moderate rate of speed when another car struck us violently on the left-hand side as we approached the intersection and the blow knocked the car—.

"Q. You mean the cab?

"A. The cab; making it run up on to the sidewalk over the curb and into a group of people standing on the sidewalk; it ran through the group of people and stopped immediately; a crowd gathered; the driver called up his office and several other cabs or another cab came over to the scene. The injured people were put in another cab and taken away; we got in another and proceeded on to Mrs. Moore's. This car that struck us came from the rear and struck us on the left; they were going at a relatively high rate of speed, I don't know how fast. They never stopped; they went right on. I was riding on the left-hand side of the cab. I got out immediately on the running board of the cab to see if I could see the car that hit us; it disappeared very rapidly."

The testimony of Mrs. Lott, Mrs. Moore, and Mr. Quaw, the other passengers of the cab, is substantially the same as that of Mr. Lott, although it is somewhat doubtful that Mrs. Lott and Mrs. Moore actually saw the automobile, which struck the cab, prior to the impact.

Mr. George Keel, a motion picture engineer, also testified for the defendant. He says that he had just purchased a package of cigarettes at a barroom back of the store situated on the uptown lake corner of the intersection, and upon leaving the building, which was about 150 feet from the point of the accident, he heard a crash on Tulane avenue; that he looked across the street, and that he saw an automobile traveling at a high rate of speed, passing a taxicab. He immediately ran over to the cab and assisted in helping the injured persons.

In further substantiation of its contention that the automobile struck the cab on its left side, the defendant introduced in evidence pictures taken of it by a commercial photographer two days after the occurrence. These pictures exhibit an indentation and breaking of the rear portion of the left front fender of the vehicle near the point of its joinder with the running board as well as blemishes on the hub cap of the left front wheel. They also disclose that the left front wheel of the the cab was knocked towards the left and that it is out of alignment with the right front wheel. Several employees of the defendant company, viz., James L. Padgett, Louis Bernard, Joseph Solomon, and Joseph La Hoste, who did not see the accident but who inspected the cab shortly after its occurrence, all verify that the damage to it, as shown by the pictures offered in evidence, is correct.

In rebuttal of the evidence offered by the defendant respecting the cause of the accident, the plaintiff tendered several witnesses. She is unable to throw any light upon the incident by her own testimony because she admits that neither did she see the other automobile which allegedly ran into the side of the cab, nor did she observe the latter before it struck her. Her principal eyewitnesses are her sons, John and William Tymon. They state that, while they were standing on the corner of Tulane avenue and South Tonti street with their mother, they noticed an automobile, traveling in the roadway on the downtown side of Tulane avenue near the neutral ground, approaching the intersection; that, when it first attracted their attention, it was approximately 100 to 150 feet from where they were standing; that, just at that time, they saw the headlights of the taxicab which was proceeding in the rear of the oncoming automobile

at a fast speed; that the taxicab swerved to the right and attempted to pass the automobile on the wrong side; that, in so doing, the driver of the cab evidently lost control of it; and that it mounted the street curbing and ran into and knocked down their mother and Mrs. William Tymon. They further say that the cab struck a small sign which was near the sidewalk close to the point where they were standing; that after the accident they examined the cab and found no damage on the left side thereof; but that their inspection disclosed that its right front fender was dented and smashed, and that the lens of the right front headlight was broken.

The assertions of plaintiff's sons as to the manner in which the accident occurred is corroborated by the testimony of plaintiff's daughter-in-law, Mrs. John Tymon, and their statement with respect to the damage to the cab is supported by the evidence of Officers Vandervoort and Gagan of the New Orleans Police Force, Alphonse Benoit and George Gasperecz, who arrived on the scene shortly after the accident happened. All of these witnesses testified that the left side of the cab was not damaged in the accident but that, on the contrary, the only portion of the vehicle which was mutilated was the right front headlight and fender.

The trial judge, who saw and heard the witnesses (with the exception of Mr. and Mrs. Lott and Mr. Quaw, passengers in the cab), was apparently of the opinion that the taxicab had been struck on its left side by an unknown automobile, which was attempting to pass the cab on the left from the rear, and that the negligence of the driver of that automobile was the sole cause of the accident.

We are certain, from a careful examination of the record, that there was a prior collision between the taxicab and an automobile which caused the cab to be knocked onto the sidewalk and into the plaintiff. This conclusion, in our view, manifests itself from the pictures of the cab offered in evidence by the defendant. Counsel for plaintiff, however, say that we should accept the statements of plaintiff's witnesses, respecting the damage to the cab, contending that this evidence preponderates over the photographs offered by the defendant which are corroborative of the testimony of defendant's witnesses. We see no reason to do so. Such a ruling would be tantamount to saying that the

defendant has fraudulently changed the physical condition of the taxicab between the date of the accident and the time the pictures were taken, in order to maintain the theory of its defense. We do not find anything in the record to warrant this result and are convinced that the pictures display a true and accurate account of the damage to the cab immediately after the accident.

We are also of the opinion that the defendant's evidence as to the manner in which the accident happened is sufficient to rebut the presumption of its negligence which existed by reason of the fact of the accident. It has proved to our satisfaction that its driver was at all times operating the cab with prudence on the right side of the roadway at a moderate rate of speed. He could not foresee that another automobile would sideswipe his cab or strike it with such violence as to cause him to lose control of its movement. This is so notwithstanding the opposing testimony of plaintiff's two sons and her daughter-in-law that the car was speeding and that the driver lost control of it when he attempted to pass the automobile on the wrong side. These statements cannot prevail when they are considered in connection with the established fact that the cab was struck on its left side and when weighed against the very impressive testimony of Mr. Lott and the other passengers of the taxicab. Mr. Lott's version of the occurrence is most convincing and is tersely set forth by him in the language we have hereinabove quoted. He and the other passengers of the cab were entirely disinterested in the outcome of the case.

Moreover, even if we had experienced any difficulty in determining the correct finding on the question of fact involved, we would nevertheless be inclined to sustain the presumptive correctness of the ruling of our brother below, for, no matter in which light the testimony is viewed, it cannot be fairly said that the judge was obviously mistaken in holding with the defendant.

We sympathize deeply with the plight of the plaintiff in this case as she was seriously injured through no fault of her own. But this fact alone is insufficient to permit us to grant an award in her favor against the defendant company as it has shown, by a preponderance of proof, that it was blameless. It is likewise unfortunate that no one at the scene of the

accident was able to discover the identity of the automobile which struck the taxicab as the plaintiff is undoubtedly entitled to recover her just dues against the driver of that car.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

