No. 3802

Second Circuit

JONES v. OUACHITA BAKING CO.

(June 2, 1930. Opinion and Decree.)
(July 5, 1930. Rehearing Refused.)
(October 7, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for plaintiff, appellee.

George Wesley Smith, of Rayville, and Gordon Boswell, of New Orleans, attorneys for defendant, appellant.

DREW, J. Plaintiff sued for damages caused by the collision of a bread wagon belonging to defendant with a motorcycle that plaintiff was riding. He alleges:

(1) That he was riding a motorcycle on Gordon avenue going south and keeping well to the right-hand side of the street.

(2) That he was traveling at a moderate rate of speed and had practically crossed Pargoud street when the truck, going north on Gordon avenue at a rapid and reckless rate of speed, swerved suddenly to the left, without any warning, and struck your petitioner on his left leg and struck the motorcycle just in the rear of the front wheel, throwing your petitioner onto the curb and inflicting injuries upon him.

(3) That Kirby, the driver of the truck, turned to the left without giving the signal required by ordinance of the city of Monroe.

(4) That he was driving in a reckless manner and exceeding the speed limit of the said ordinance.

(5) That the said Kirby was not keep-

ing a lookout and did not see plaintiff until the moment of the collision.

(6) That the said' Kirby negligently "cut the corner" in making a left turn and that, had he made the left turn in a careful, prudent, and lawful manner, he would have missed plaintiff entirely and the accident would have been averted.

He prays for judgment in excess of $9,-000 for injuries received, medical bills, etc.

Defendant alleges that its driver was driving at a safe speed, keeping the proper lookout and watch; was exercising due care and caution and had given the proper signal. He alleges that the collision, as set out by plaintiff, was due entirely to the carelessness of plaintiff; that plaintiff was driving his motorcycle at a terrific rate of speed and in disregard of all common-sense rules of traffic, as well as the traffic laws of the city of Monroe; that plaintiff was not keeping a proper lookout and watch ahead and that he approached the intersection of Pargoud and Gordon at a rate of speed in excess of 30 miles per hour and negligently and carelessly collided with the truck of defendant; further alleges that defendant's truck approached the intersection at a rate of speed of less than 15 miles per hour and that the driver of the truck gave the proper signal for a left turn, reduced his speed to less than 10 miles per hour, when the motorcycle crashed into the truck; alleges that if plaintiff was injured, he sustained such injuries as the result of his own negligence.

The Central Service & Storage Company, Inc., intervened in the suit, setting up that they were the employers of plaintiff and had paid him compensation under the Workmen's Compensation Act and praying for judgment out of the amount recovered by plaintiff equal to the amount they had paid him as compensation, together with doctors' bills, etc.

The case went to trial on these issues and there was judgment in the lower court in favor of plaintiff for the sum of $2,500, and ordering $680.95 out of that amount to be paid to the Central Service & Storage Company, Inc., by preference and priority over all other persons. From this judgment the defendant has appealed and plaintiff has answered the appeal praying that the judgment of the lower court be amended by increasing the amount to that amount sued for.

The truck driver was employed by the defendant, was driving its truck and acting within the scope of his employment at the time of the accident. Therefore, if he was negligent and caused injury to plaintiff, defendant is liable.

Plaintiff was traveling south on Gordon avenue on a motorcycle with a carriage attached. He was on the extreme right-hand side of the street and traveling at a rate of speed between 25 and 30 miles an hour. Defendant was traveling north on the same street at a rate of speed of about 25 miles per hour, until he reached the intersection of Gordon and Pargoud streets, when he reduced the speed of his truck to about 15 miles per hour in order to make the left-hand turn. The rate of speed of either vehicle has no bearing on the case as the speed had nothing whatsoever to do with the accident.

Plaintiff saw defendant's truck about a block before it reached the intersection and was watching it all the time, and, when he reached the intersection, he entered it before the truck had yet reached it. Plain-

tiff was nearly across the intersection when he was 'struck—the testimony and the signed statement of the defendant driver being that he was struck when about 6 feet from the southwest corner of the intersection of the two streets, clearly past the center of the intersection.

The defendant driver claims to have signaled for a left turn when 50 feet from the intersection. Plaintiff claims to have been watching the truck at that time, but did not see any such signal. However, that is not material to the case, for plaintiff reached the intersection first and had the right to cross and had crossed into what should have been considered a place of safety so far as this truck was concerned— had the truck driver obeyed the law of the road and the ordinance of the city of Monroe. The truck driver testified that he did not see the plaintiff until he was in the act of colliding with him. He does not give any reason for not seeing him and we know of none. They were traveling in opposite directions on the same street and the evidence shows that there were no other cars traveling on that part of the street at that time. There was nothing to prevent the truck driver from seeing plaintiff, and, if he had been keeping a proper lookout, he would have seen him. It was his duty to keep such a lookout, and he failed in that duty which the law has fixed.

On reaching the intersection, the truck driver, instead of keeping to the right in making a left turn, "cut the corner," driving his truck south of the center of the intersection and within 6 or 8 feet of the southwest corner of the intersection. He gave as his reason for cutting the corner that the other part of the street was rough and he was following a beaten path. The law of the road and the ordinance of the city of Monroe require one in making a left turn to travel to the right of the center of the intersection and not to the left of the center of the intersection. Had the truck driver obeyed the law of the road and the ordinance of the city of Monroe, there would not have been an accident for the plaintiff was at the time of the accident within 6 or 8 feet of the south side of the intersection and almost across. Plaintiff had a right to expect that the defendant driver would obey the laws of the city and of the road, and the failure of the truck driver to obey the laws, together with his failure to keep a proper lookout on entering an intersection, was the proximate cause of the accident, and there was no negligence on the part of plaintiff.

The lower court held the defendant liable for the damage to plaintiff, and in that respect the judgment is correct.

The plaintiff is a negro, 23 years of age, and was making $17 per week engaged in manual labor, washing cars and working around a filling station. He suffered a complete dislocation of the knee—that is, the foot was turned around with the toes facing the rear, using the knee as a hinge. He suffered intensely. He remained in the sanitarium under the care of physicians from January 29th until the 16th of March, and was last treated on the 7th of May. All the doctors testify that he will suffer a 40 per cent loss of the use of his leg, which is permanent, and that it is necessary for him to have two other operations, one, to cure an injury to his wrist, which was fractured, and another to remove a growth caused by the accident on his leg, which growth has developed into a tumor. They testify that the operations will cost around $200; that his kneecap is

displaced upward about two inches and has several large scars on his leg, due to incisions in treating the knee. The knee is 25 per cent larger than the uninjured one.

If plaintiff is not entirely incapacitated from doing manual labor, he is nearly so, and no doubt it will be difficult for him to secure employment of any kind that he can perform.

The testimony of plaintiff was very refreshing. He made no attempt to exaggerate his injury or his suffering, and in fact did not testify about his suffering being as great as other disinterested witnesses who observed him during the time he was in great pain.

A young negro only 23 years of age, earning his living by manual labor with earning power of $17 per week, who has been injured as severely as plaintiff, is not adequately compensated by a judgment for $2,500. He will always have a 40 per cent loss of the use of his leg, which almost if not entirely incapacitates him from doing any manual labor. A judgment for $4,000 in this case will not be excessive.

The judgment of the lower court in favor of interveners, Central Service & Storage Company, Inc., was not appealed from and cannot be disturbed.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court in favor of plaintiff and against the Ouachita Baking Company, Inc., in the sum of $2,500 be amended by increasing the amount in favor of plaintiff to $4,000, and, as so amended, the judgment of the lower court be affirmed; costs to be paid by appellant.