JUSTIN et ux. v. CHARLEY CABS, Inc., et al.*
No. 15008.

Court of Appeal of Louisiana. Orleans.
Oct. 29, 1934.

Hugh M. Wilkinson, A. Miles Coe, Fred W. Oser, Harry Nowalsky, and Geo. M. Leppert, all of New Orleans, for appellants.

A. A. Calongne, Sr., of New Orleans, for appellees.

LECHE, Judge ad hoc.

Rene Justin and his wife brought this suit against the Charley Cabs, Inc., and Frank R. Affronte for the use and benefit of their minor son, Rene Justin, Jr., age 15 years. Judgment for $1,500, with interest and costs, was rendered in favor of plaintiffs and against defendant Charley Cabs, Inc., only. Both defendants appealed from this judgment, as did plaintiffs. Plaintiffs sued for damages for injuries to their minor son as the result of a collision at the intersection of Tulane avenue and Elks place.

Tulane avenue is a wide street with a double. car track in the center and parallels Canal street at that point and is two blocks distant. Elks place runs at right angles from Tulane avenue to Canal street and has a neutral ground in the center, but no street car tracks. The taxicab owned by the defendant Charley Cabs, Inc., and driven by its agent, F. R. Affronte, was proceeding on the upper side of Tulane avenue in the direction of the river and turned left across the street car tracks on Tulane avenue, with the intention of proceeding down the riverside of Elks place to Canal street. Plaintiffs' son was riding a bicycle on the lower side of Tulane avenue, proceeding in the direction of the lake, with the intention of crossing Elks place and proceeding straight out Tulane avenue to Claiborne avenue. There is no dispute that the collision occurred on the lower side of Tulane avenue in the intersection of the riverside roadway of Elks place. All the witnesses agree approximately on this point. It is admitted that the taxicab turned left and proceeded across the street car tracks on Tulane avenue and up to the point of the collision without stopping. It is also admitted that the bicycle was proceeding near the right-hand or downtown curb of Tulane avenue in the direction of the lake. The driver of the taxicab admits that he did not sound his horn. There is a conflict in the testimony as to whether the cab struck the bicycle, or whether the bicycle struck the cab. The only physical evidence before us is the damage to the front wheel of the bicycle. This could have been caused either by the bicycle striking the cab, or by the cab striking the front wheel of the bicycle. The question, in our opinion, is answered by the defendant Affronte, who testified on direct examination as follows:

"Q. Where was it after the accident when you picked up the boy? A. That I don't recall. He was standing up—

"By the Court:

"Q. That is not the question. Where was he? A. In the center of the automobile.

"By Mr. Coe:

"Q. Did the automobile pass over him? A. No, sir.

"Q. Where was his bicycle? A. Right in front of the automobile with the front wheel broken.

"Q. When you speak of the center of the automobile, what do you mean? A. Between the two doors.

"Q. Not the center of the front? A. No, the center of the side.

"Q. He was then between the front and back wheels on the right hand side? A. Yes, that is it."

There is no doubt that the cab proceeded at least several feet after the collision before stopping. Therefore, if the bicycle struck the right side of the cab, both bicycle and its rider would have been to the right and rear of the cab and the bicycle could not have been "right in front of the automobile with the front wheel broken." If the cab struck the front wheel of the bicycle, the result, as testified to by defendant Affronte, was most likely, namely, that the bicycle was knocked to the front of the cab and its rider was thrown off, landing on the pavement about the center of the right side of the cab.

As to the speed of the cab, its driver testified that he was crossing the intersection at about five miles an hour. Two of the plaintiffs' witnesses testified he was going twenty-five or thirty-five miles per hour and we see no reason for disturbing the finding by the trial judge that the cab was proceeding at the rate of fifteen miles per hour at the time of the collision. A careful analysis of the testimony shows that the cab, proceeding out the upper side of Tulane avenue in the direction of the river, turned left at Elks place and, without stopping or blowing its horn, crossed the street car tracks on Tulane avenue, and was proceeding to cross the lower side of Tulane avenue to enter the riverside roadway of Elks place, when it struck the front wheel of the bicycle, which was traveling near the

lower curb of Tulane avenue in the direction of the lake, the collision taking place on the lower side of Tulane avenue in the intersection of the riverside roadway of Elks place and near the neutral ground of Elks place.

In finding for the plaintiff the trial judge said:

"Tulane Avenue at Elks Place, where the accident happened, has a double car track on it and under the city ordinance of New Orleans it was the bounden duty of the driver of the offending cab to have come to a full stop before crossing those double car tracks. Had he done so the accident never would have happened, so, therefore, this is a case where the violation of the traffic ordinance caused the accident."

Counsel for appellants quote in their brief paragraph b, section 10, article VI of ordinance No. 13,702, C. C. S., reading as follows:

"On streets and avenues having neutral grounds and carrying street car lines, vehicles crossing such neutral grounds shall have the right of way to complete the crossing of the roadway of such street or avenue, under the following conditions:

"Provided that the vehicle shall come to a full stop when about to leave the neutral ground and enter the roadway, shall signal with horn and give opportunity for approaching vehicles in the roadway to come to a stop, it being the intention of this provision to require vehicles in said roadway to stop upon receiving reasonable warning, in order that vehicles standing on the neutral ground shall be permitted to complete the crossing of or turning into the roadway."

█ It is contended that the learned trial judge erred in applying this section of the ordinance, because by its terms it applies solely to "streets and avenues having neutral grounds and carrying street car lines," inasmuch as Tulane avenue in the vicinity of Elks place, although it has a double car track, has no neutral ground. There is nothing in the record to show that the learned trial judge intended, or did apply this section of the ordinance. This section provides that in order to obtain the right of way "the vehicle shall come to a full stop when about to leave the neutral ground and enter the roadway," while the trial judge says in his reasons for judgment that "it was the bounden duty of the driver of the offending cab to have come to a full stop before crossing these double car tracks." Section 8 of article VI of the same ordinance specifically designates Tulane avenue as a through street and provides

that all vehicles shall stop before crossing a through street. Therefore, had defendant's cab been approaching Tulane avenue at this point from an intersecting street, it would have been his duty to come to a full stop before entering same, and, had there been a neutral ground and car tracks, under paragraph b, section 10 of article VI, as above quoted, it would have been his further duty to stop again before leaving the neutral ground in order to negotiate the other roadway of said street. The ordinance is very particular in the rules concerning the crossing of streets, providing for stops before entering through streets, and providing a second or additional stop where those streets have neutral grounds and street car tracks, and, this being the case, it seems to us perfectly clear that a vehicle proceeding along one side of such a street and turning to the left to cross the line of traffic on the other side of the street is just as much obligated, if not under a greater obligation, to stop than one entering such a street from an intersection.

At the intersection of two streets it might reasonably be expected that a vehicle may enter or cross the through street from the intersecting street, but a vehicle proceeding on the through street, and suddenly turning left to cross it, takes traffic proceeding in the opposite direction, on the other side of the street, by surprise. It must be borne in mind that the purpose of the stops provided by the ordinance is to obtain the right of way by giving the cross traffic a reasonable chance to stop and allow the vehicle to cross. There is no question that the bicycle had the right of way, as it was traveling on a through street and traffic on through streets is specifically given the right of way by the ordinance.

Article 5, section 15, paragraph a, of the ordinance reads as follows:

"Vehicles approaching an intersection.— The operator of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection. When two vehicles enter an intersection at the same time the driver of the vehicle on the left shall yield to the driver on the right."

Under the above-quoted section of the ordinance, even if both vehicles entered the intersection at the same time, the bicycle would have the right of way, inasmuch as the taxicab was approaching from the left. However, the record shows that the collision occurred toward the neutral ground of Elks place, showing that the bicycle was well across the roadway of Elks place at the time it was struck.

■ Article V, section 15, paragraph c, of the ordinance reads as follows:

"Vehicles turning left at an intersection.— The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by law, may make such left turn, and other vehicles approaching the intersection from said opposite direction shall yield to the driver making the left turn."

Under the above applicable section of the ordinance it was clearly the duty of the driver of the cab to yield to the bicycle, as the bicycle was approaching from the opposite direction and, even if not within the intersection, as shown by the record, it was so close thereto as to constitute an immediate hazard.

■ The driver of the taxicab did absolutely nothing which could be construed as yielding. He turned to the left within the intersection and did not stop his car, nor did he blow his horn, or slow down so as to permit the bicycle, which had the right of way, to pass. He complied with no provision of the ordinance which would give him the right of way over the bicycle and it is our opinion that the collision was caused solely and only by his negligence and failure to observe the provisions of the ordinance.

■ As to the injuries, there seems to be no doubt of a sacroiliac strain. One of plaintiff's physicians testified positively to this fact. The other states that he was unable to make a diagnosis, but treated the injured party synthetically. Defendant's physician testified that pressure over the right sacroiliac articulation was painful and that if a strain exists there is no external evidence of it. He further testified that he applied pressure over other parts, but no complaint was made until the pressure was applied to this particular spot. None of the physicians testified that there was not a sacroiliac strain. A strain of the sacroiliac joint is exceedingly painful and takes time to heal. Te record shows that, while such an injury may cause some permanent condition in an older person, permanent results do not usually occur in a boy 15 years of age. The record further shows that there was a painful condition existing over a period of several weeks and that the spot was sensitive for several months. It is also shown that plaintiff's son received minor contusions and brush burns about the head and body as a result of the collision. Under the circumstances, we believe that the sum of $1,500 fixed by the court below was somewhat excessive and that the sum of $1,000 is sufficient.

It was admitted by counsel during the argument of this case that, should there be liability, judgment should be rendered in solido against both defendants.

Consequently, the judgment appealed from is hereby amended so as to read as follows:

It is ordered, adjudged, and decreed that there be judgment in favor of plaintiffs, Rene Justin, Sr., and wife, for the use and benefit of their minor son, Rene Justin, Jr., and against the defendants, the Charley Cabs, Inc., and F. R. Affronte, in solido, for the full sum of $1,000, with legal interest from judicial demand, until paid, and for all costs in both courts.

Judgment amended.