## ADAMS v. GOLSON et al. (MASSACHUSETTS BONDING & INSURANCE CO., Intervener).*

### No. 1649.

Court of Appeal of Louisiana.
First Circuit.

Dec. 10, 1936.

Albritton & Hardin, of Baton Rouge, for appellants.

Jos. A. Loret and James J. Bailey, both of Baton Rouge, for appellee.

LE BLANC, Judge.

Plaintiff was injured as a result of a collision between his motorcycle, which he was riding, and an Oakland sedan automobile belonging to the defendant Lamont P. Golson, which was being driven at the time by his wife, Mrs. Willie McCoy Golson, the other defendant, at the intersection of North street, with North Twelfth street in the city of Baton Rouge, at about 6:30 o'clock in the evening of March 7, 1934. Claiming that the accident occurred because of the negligence of Mrs. Golson in making a left-hand turn from North street into North Twelfth street, plaintiff instituted this suit for damages against the two defendants, seeking to recover the sum of $7,866.39 from them each, individually and in solido. The demand against Lamont P. Golson is predicated on the theory that the automobile which was a community asset, was being driven

*Rehearing denied Jan. 12, 1937. Writ of error granted March 1, 1937.

by his wife at the moment with his consent and approval; that she was then on an errand entailing an expense of the community, and therefore the community is answerable in damages for the tort committed by her.

The Massachusetts Bonding & Insurance Company, which carried workmen's compensation insurance for the plaintiff's employer, having paid the plaintiff the sum of $730 in settlement of his compensation claim, intervened and asked that it be refunded the amount so paid by it out of any judgment that may be rendered in favor of the plaintiff, by preference and priority over all other persons whatsoever. There does not appear to be any special defense made against the claim of this intervener, and it seems to be conceded that it is entitled to the relief it seeks in the event plaintiff would be successful in obtaining final judgment against the defendants or either of them.

Judgment in the lower court was in favor of the defendants and against the plaintiff and intervener dismissing the former's suit and the latter's intervention, and they have both appealed. We might state here also that the defendant Lamont P. Golson had reconvened, praying for damages against the plaintiff in the sum of $13.50 for damages to his automobile and that that demand was also rejected in the lower court. No appeal was taken from that part of the judgment, and the claim apparently has been abandoned.

In his petition plaintiff charges negligence on the part of Mrs. Golson (1) in respect to her violation of a city ordinance of the city of Baton Rouge by having executed a left-hand turn in the intersection without going far enough to the right and beyond the center thereof, which violation, it is contended, constituted the proximate cause of the accident; (2) in failing to keep a proper lookout for traffic; (3) in turning her automobile directly to the left in face of the approaching motorcycle at the moment when she ought to have seen it; and (4) in the alternative, if she was looking and saw the motorcycle, then in making the left-hand turn directly into it.

The defendants deny the various charges of negligence made against Mrs. Golson and that she was at fault whatever, and aver on the contrary that it was plaintiff who was negligent in driving his motorcycle without lights after dark, and immediately behind an automobile where it was impossible for her to have seen him. They aver also that she gave the proper and necessary signals incidental to making a left-hand turn into the intersection, but that, as plaintiff was not keeping a proper lookout, he failed to observe her about to make the turn and negligently ran his motorcycle into the front of the automobile. His negligence, they aver, was the sole and proximate cause of the accident. In the alternative, they pleaded that, even though Mrs. Golson be held to have been negligent, plaintiff's own negligence, as set out by them, contributed to the accident and therefore he cannot recover. With regard to the demand made against Mr. Golson as head and master of the community, it is denied that the community is liable at all, as at the moment of the accident Mrs. Golson was not engaged on a mission which involved the community in any way whatsoever.

North street in Baton Rouge runs east and west and North Twelfth street, north and south. North Twelfth street enters North street on the south and stops there. North street, according to measurement placed on a map made by E. A. Davis, civil engineer, and filed in evidence, is 29 feet 3 inches from curb to curb and North Twelfth street, 26 feet 11 inches wide.

Mrs. Golson had spent a part of the afternoon with a friend of hers, Mrs. C. W. Damiano. Together they had attended a style show in one of the large department stores in Baton Rouge. After the show, Mrs. Golson drove Mrs. Damiano to her home, which is east of the intersection of North Twelfth street. After letting her out, she turned her car around and came back down on North street, driving west, with the intention of turning south into North Twelfth street as she reached the intersection.

The plaintiff, C. L. Adams, was riding his motorcycle on North street, headed east. As he was nearing North Twelfth street, he was following a truck at a distance which he estimates to have been about 35 feet. The relative speed at which each was going does not enter into consideration as an element of negligence on the part of either party, and responsibility for the accident rests on the negligence vel non on the part of Mrs. Golson in making the left-hand turn in violation of the city ordinance and of the ordinary driving regulations, or on the alleged negligence of the plaintiff Adams in driving after dark without lights

and failing to keep a proper lookout, or, again, on the combined negligence of both.

The learned district judge assigned no written reasons for judgment, but apparently he found that both parties were negligent, as he rejected the reconventional demand against the plaintiff as well as latter's demand against the defendants. Our consideration of the evidence leads to a different conclusion, as we are unable to find negligence on the part of the plaintiff.

■ The preponderance of the testimony shows that it was the automobile that ran into the motorcycle and that the impact took place at a point 8 to 10 feet from the southeast corner of the intersection. With those two points of proof established, the conclusion follows that Mrs. Golson started to make her left-hand turn into the street several feet before reaching the center of the intersection, and at a time when the motorcycle was well past that point. This was in direct violation of the provisions of the city ordinance of the city of Baton Rouge and also of the plain and ordinary rules of safe driving in attempting to execute such a dangerous maneuver. To use the expression which is commonly applied to such an act, she was "cutting the corner" in front of the motorcycle which had already pre-empted the right of way. Such an act on the part of the driver of an automobile in some cases constitutes gross negligence. The following we quote from Babbit's Motor Vehicle Law (4th Ed.) p. 477, § 670: "A driver making a left-hand turn on a much travelled highway should exercise extra precaution, seek the opportune time to effect the turn, and look out for automobiles approaching from the opposite direction, as such automobiles, if they reach the intersection at the same time as the one desiring to turn, have the right of way over the latter, and if the driver turning disregards such right, he may be charged even with gross negligence, and his neglect may be regarded as the proximate cause of the accident." Two cases from Louisiana are cited as authority for the text, viz.: Michiels v. Oser, 19 La.App. 24, 139 So. 497, and Abel v. Gulf Refining Co., 143 So. (La. App.) 82.

We say that the preponderance of the evidence favors the plaintiff on this point because Mrs. Golson's testimony, which is that she had run her automobile beyond the center line of the intersection before attempting the turn, is outweighed by that of the plaintiff and another witness who actually saw the accident happen. Their testimony is positive that she started to turn several feet before reaching that point. Several witnesses who reached the scene immediately following the collision and saw the vehicles before they had been removed, strongly corroborate the plaintiff and his sole eyewitness. Two police officers who arrived some ten minutes later, and after both the automobile and motorcycle had been removed, attempt to justify Mrs. Golson's statement by referring to water and débris which they say they saw near the center of the intersection. They identify that spot by locating it near a manhole in the street. It is rather significant that there are two manholes within the intersection, one near the center and the other well in the southeast corner where the impact took place, and it may be that these officers were a bit confused about the particular one they had in mind. Be that as it may, we are satisfied, as we have already stated, that the more positive testimony on this point is on the side of the plaintiff and places fault on the part of Mrs. Golson in trying to effect a left-hand turn in the intersection.

But, even though this were not sufficient to hold her to blame, we think she was further at fault in not having seen the approaching motorcycle and in not controlling her car in view of its presence in the intersection. Mrs. Golson says that she stopped on the right-hand side of North street facing directly west, in order to let a car coming from that direction go by, and that she then proceeded to make her turn to the left. The car she refers to evidently was the truck which the plaintiff says he was trailing by about 35 feet. Why, in turning her car at an angle, toward the south, as she says she did, to make the turn, she did not see the motorcycle, is a matter which she has not satisfactorily explained. Her lights were burning, and must have thrown a beam right in the path of the motorcycle at the time. She attempts to excuse her failure in this respect by saying that the motorcycle had no light burning at the time. Even so, that would have been no reason for her not seeing the motorcycle itself.

The failure of Mrs. Golson to have seen the motorcycle presents one of the features found in the case of Jones v. Ouachita Baking Co., 14 La.App. 415, 128 So. 551, in which the facts are strikingly similar to those in the case presently before the court, and, in the absence of any explanation on

the part of the driver of truck who was making the left-hand turn why he did not see the motorcycle, as in this case, the court held that he had failed in that duty of keeping a proper lookout which the law had fixed on him.

Regarding the plea of contributory negligence directed at the plaintiff, we find that it is centered on the charges that he did not have a light on his motorcycle and was not keeping a careful lookout and did not observe the signals given by Mrs. Golson before she made her left-hand turn.

The defendants' attempt to show that plaintiff's motorcycle did not have a light burning at the time of the accident failed. Mrs. Golson herself would not testify positively that it did not have its headlight burning, and there is rather strong proof in the record concerning a conversation she had with plaintiff when he was in the hospital in which she admitted to him that his headlight was on and that she could not understand why she had not seen it. Plaintiff himself offered satisfactory proof to show that it was burning.

There is no proof in the record to show that plaintiff was not keeping a proper lookout, and the only signal he could have observed that Mrs. Golson intended making a left-hand turn would have come from her stopping on the right-hand side of North street to let not only the truck which was ahead of him, but all traffic coming into the intersection from the opposite direction at that moment, pass by. Granting that she did stop for the truck to pass, as she says she did, and as she was in duty bound to do, he had every right to anticipate that she would remain in that position until he had cleared the intersection. Instead, she started to make the turn after he had entered and struck his motorcycle when he was well past the center. This, as it was also held in the case of Jones v. Ouachita Baking Co., supra, was the proximate cause of the accident for which we hold Mrs. Golson liable in damages to the plaintiff.

The claim against Mr. Golson as head and master of the community is predicated solely on the theory that Mrs. Golson was, at the time of the accident, on a community errand, and not on the broad "family purpose doctrine" which prevails in some states with regard to the liability of the husband or father for an accident occurring when the wife or some member of the household was driving the family automobile.

As far as we have been able to ascertain, the Louisiana courts have never passed on the "family purpose doctrine," but there are certain cases in which liability has been imposed on the husband as head and master of the community when it was shown that the wife, driving the automobile which belonged to the community, with his consent, either direct or implied, was engaged on an errand bearing some relation to the community at the time of the accident. In one of the cases, Paderas v. Stauffer, 10 La. App. 50, 119 So. 757, 120 So. 886, 887, the automobile was the separate property of the wife and the husband sought to be relieved on the ground that he could not be held for her tort while driving it "in her own separate affairs and concerns." He failed to prove that at the time she was so engaged, and the court held that such failure resulted "in the inevitable conclusion that, as a matter of fact, she was on a community errand." It developed from the testimony, as appears in the decision, that the wife was on a shopping trip and it was held that, regardless of the nature of the shopping, whether for the household or for her personal requirements such as a hat or clothing, she was on a community errand, and "she was just as much the agent of her husband as head and master of the community as would have been the family chauffeur."

In Tarleton-Gaspard v. Malochee et al., 16 La.App. 527, 133 So. 409, 413, the automobile belonged to the husband, having been given to him as a wedding present by his father, but it was used by his wife with his authority as a "family car." The accident involved in the case occurred at a time when she was driving the car. She had gone on a visit to her parents and was taking them to a picture show. The court held the husband liable on the doctrine announced in the case of Paderas v. Stauffer, supra, stating further, "We are of the opinion that Mr. Bisso is liable because his wife, under the circumstances, was his agent just the same as if she had been a family chauffeur."

In Battalora et al. v. Carnahan Creamery et al. (La.App.) 157 So. 612, 615, the wife was driving the automobile which, allegedly, was owned by the husband. What her errand or destination was at the time of the accident does not appear from a reading of the decision. On passing on the claim of liability as against the husband, the court merely stated the following: "That

Mr. Salathe is liable under the circumstances seems to be well settled," and in support of its statement quoted at length from the decision in the case of Tarleton-Gaspard v. Malochee, supra.

The three cases referred to all were decided by the Court of Appeal for Orleans Parish. The Court of Appeal for the Second Circuit had the question under consideration in the case of Tuck v. Harmon, 151 So. 803, 804, and discharged the husband from liability on a showing that at the time of the accident complained of his wife was using the automobile without his knowledge, he being absent at the time, in rendering assistance to friends who were having trouble on the road and who had 'phoned his house asking that he drive out and bring them in. "There is no provision in the Code," said the court, "making the husband, because of the marital relationship, liable for the torts of his wife. To render him so liable, where he is not present, it must be shown that the wife was acting as his agent, or was using the car for the purposes of the community."

This court, in the case of Globe Indemnity Co. v. J. R. Quesenberry and Wife, 1 La. App. 364, sustained an exception of no cause of action filed on behalf of the husband in a suit for damages against him and his wife jointly, when the plaintiff had failed to allege that the automobile involved in the accident and driven at the time by the wife was being used under the direction of the husband or that she was acting as his agent. "The question of law then raised by the exception of no cause of action," states the court, "is whether under these facts, the husband by the mere fact of occupying the relationship of husband, is liable for the negligence of the wife, granting that there was negligence," and its decision in maintaining the exception was that he was not.

A consideration of these cases cited from all three Courts of Appeal would indicate a more liberal trend on the part of one of them toward holding the husband liable under any circumstances when the wife is driving the "family" car, than the other two. Especially does this appear in the Tarleton-Gaspard v. Malochee Case, where the accident occurred when the wife was driving her own family to a picture show, and in the Battalora Case, where the opinion handed down does not even indicate on what errand or mission the wife was at the time the accident happened. How far the

Court of Appeal for Orleans parish meant to apply the "family purpose doctrine" which prevails in some states and which is even extended to cases where any member of the family or of the household may be driving the "family" car at the time of the accident which gave rise to the suit for damages we do not know and are not concerned with at this time. Suffice it to say that this court has specifically refused to apply the doctrine in the case of Globe Indemnity Co. v. Quesenberry and wife, supra, stating that "in this state, liability for damages must be clearly expressed or implied from the terms of the statute, Art. 2315 of the Code." It is to be noted, however, that in that case there was no attempt to hold the husband on the ground that the community might have been involved because of the errand on which the wife was engaged at the time. It is inferred from the decision that, if the petition had alleged that the wife had been acting at the time as the agent of her husband, and, as we think it follows, also of the community, plaintiff's cause of action against the husband would have been maintained. The decision in the case of Tuck v. Harmon, leaves but very little doubt on the point that the husband will be held liable if it is shown that at the time of the accident the wife "was using the car for the purposes of the community." With all of these decisions as our guide, we think that the test to be applied may properly be said to relate to the errand or mission on which the wife may have been engaged at the time of the accident. Was the trip on which she was using the car at the time, with the husband's consent either direct or implied, one in which the community was involved as a matter either of gain or one of expense or loss?

Applying this test to the facts shown in this case, we are of the opinion that at the time of the accident Mrs. Golson was on an errand involving the community existing between herself and her husband. She had used the car that afternoon to go to a style show, and just before the accident had taken her friend, who had accompanied her to the show, back home. There is a strong inference from some of the testimony that when she left her friend she was to go to purchase groceries, presumably for the household, which undoubtedly would have been a community errand. The testimony from which this inference is drawn, however, and which emanated from a signed

written statement given by Mrs. Damiano, the friend referred to, is denied by her, and we do not accept that as the particular destination of Mrs. Golson at the time she left Mrs. Damiano. Mrs. Golson insists that from there she was to go to a meeting of some fraternal organization of which she was an officer, and which visit, it is contended on her behalf, could have no possible connection with the community. But Mrs. Golson admits that before going to the meeting, she was going to Third street for lunch. To us this means simply that Mrs. Golson, after taking her friend home from the style show, either did not have or would not take time to go home for the usual evening meal, and decided, instead, to have that meal downtown on her way to the meeting. It was on her way to obtain that meal that the accident happened. Her immediate destination therefore was not the meeting, but the restaurant or lunchroom at which she was going to partake of the food which her husband was in duty bound to provide for her. It is our opinion that, when the accident happened when she was on her way there, it happened at a time when she was on a mission in which the community was concerned, and therefore the husband, as head and master of the community, is answerable for whatever damage she may have caused to some one by reason of her fault or negligence.

■ Plaintiff is accordingly entitled to recover judgment against both defendants in solido, and it now remains for us to determine the amount of the award.

The damages alleged to have been suffered were set out in plaintiff's petition in great detail, but they were not so proven. A considerable part of the damages claimed is based on what he considered would be permanent disability resulting from some of his injuries, but, from the testimony of his own doctor, he seems to have made an almost complete recovery except for the loss of the use of the little finger on his left hand and some impairment to his left arm. He appears, however, to be able to carry on his work as a mechanic which he was doing before he was hurt. That he was severely injured is not disputed. He suffered a complete fracture of three ribs and a complete, transverse fracture of two more ribs of the left side. He also sustained a complete, transverse fracture of the left humerus, with some displacement from the lower frame outward, and also a comminuted fracture of the left tibia. The loss of the use of his little finger was caused by a lacerated wound in one of the joints, which probably severed a nerve. Besides these injuries, plaintiff suffered minor lacerations of the face, the elbow and hands. The damages claimed in addition to those referred to consist of medical expenses which were paid by his compensation insurer and which are claimed in the latter's petition of intervention herein; loss of his motorcycle, $100 and loss of clothing, $4.40. For all of his physical injuries, pain, and suffering and the loss of the use of his little finger, we will allow him the sum of $3,000. We also allow him the amount of medical fees in the sum of $250 which the intervener will be entitled to recover in the judgment in its favor to be paid out of the judgment in favor of plaintiff, and we also allow him $104.40 for the loss of his motorcycle and clothing. The total amount of the judgment in his favor, therefore, will be $3,354.40.

The claim of the intervener, the Massachusetts Bonding & Insurance Company, in the sum of $730, to be paid out of any judgment which may be rendered in favor of plaintiff and against the defendants, is not disputed, and it will therefore be allowed.

For the reasons stated it is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is hereby annulled, set aside, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Charles L. Adams, and against the defendants, Mrs. Willie McCoy Golson and Lamont P. Golson, individually and in solido, in the full and entire sum of $3,354.40, with legal interest from date of judicial demand, until paid.

It is further ordered, adjudged, and decreed that there be judgment in favor of the intervener, the Massachusetts Bonding & Insurance Company, recognizing its claim in the sum of $730, with legal interest from date of judicial demand until paid, and that it be paid the said amount from out of the judgment herein rendered in favor of the plaintiff, Charles L. Adams, with privilege and priority.

It is further ordered that the defendants pay all costs of both the main proceeding and the intervention.