REGAN, Judge.
Plaintiff, Arthur J. Fuxan, Sr., father and natural tutor of his minor son, Henry J. Fuxan, instituted this suit, against the defendants, Irwin J. Messonier, Marcel Messonier, and their insurer, the Employers’ Liability Assurance Corporation, Ltd., in the amount of $8,605.99, to recover on behalf of himself, medical expenses and damages to a Servi-Cycle amounting to. $880.99, and for personal injuries sustained by his son, in the amount of $7,725, growing out of an intersectional collision between a Servi-Cycle, operated by plaintiff’s son, and a Chevrolet automobile, operated by defendant Irwin J. Messonier, son of Marcel Messonier, owner thereof, which is alleged to have occurred by virtue of Irwin J. Messonier’s negligence on May 22, 1948, at about 7:1'5 P.M. in the intersection of Esplanade Avenue and Grand Route St. John.
*759 Defendants answered and denied that the accident was caused through any negligence of the part of the operator of the automobile, “but was brought about solely by the gross negligence of Henry Fuxan”, the operator of the Servi-Cycle. In the^ alternative, defendants plead that “plaintiff’s negligence in operating the motorbike at a fast rate of speed, after dark, and without lights contributed to said accident and accordingly plaintiff should be denied recovery because of his contributory negligence.”
The court, a qua, rendered judgment in favor of plaintiff, Arthur J. Fuxan, Sr. for the use and benefit of his minor son, Henry J. Fuxan, in the amount of $2,225, and in favor of plaintiff, Arthur J. Fuxan, Sr. individually and for his own benefit in the amount of $880.99, against defendants, Irwin J. Messonier and The Employers Liability Assurance Corporation, Ltd. Hence this appeal by defendants. Plaintiff has answered the appeal and requested that the award for personal injuries incurred by his son, be increased to the sum of $3,500.
The record, as usual, reveals simple but controversial facts always present in an intersectional collision.
Esplanade Avenue, which begins at the Mississippi River and ends at the entrance to City Park, is a well known boulevard in the City of New Orleans and consists of an ascending (inbound to the River) ■ and a descending roadway (outbound to City Park) separated by what is colloquially referred to as a neutral ground, measuring about three feet in width. Grand Route St. John is a conventional paved street which intersects and crosses Esplanade Avenue at an angle of about twenty-eight or thirty degrees.
In order to circumvent repetitious designation of parties plaintiff and defendant, we shall hereinafter apply the appellation plaintiff to the operator of the Servi-Cycle and defendant to the operator of the automotive vehicle.
Plaintiff, fifteen years of age, testified he was operating his Servi-Cycle, at a speed of twenty to twenty-five miles per hour, in about the center of the ascending (inbound) lane of Esplanade Avenue, in the direction of the river, with the headlight thereon burning, although this fact is disputed by defendant. Plaintiff was also transporting a passenger on the rear thereof, named Launsberry, who did not testify in the case. There is contained in the record a stipulation signed by counsel for plaintiff and defendant to the effect that he “is presently out of the City and is a member of the United States Navy and that it was for that reason that his testimony was not taken by plaintiff. It is further agreed that no presumption is to be taken against the plaintiff for the absence of this witness”.
Plaintiff testified that he saw defendant’s automobile approaching when it was about sixty to one hundred and twenty.feet from the intersection in which the collision occurred; that defendant executed a left turn into the intersection of Esplanade Avenue and Grand Route St. John directly into the path of his Servi-Cycle, without stopping or the giving of any warning, and endeavoring to avoid the collision, he swerved his Servi-Cycle to the left and collided with the right rear portion of the bumper attached to the automobile. Plaintiff and his passenger were, simultaneously, thrown to the street and plaintiff sustained the injuries which resulted in this suit.
Defendant testified that he was driving his automobile in the descending (outbound) lane of Esplanade Avenue, close to the neutral ground thereof, in the direction of City Park, and “slowed down” to about three miles per hour in order to execute a left turn from Esplanade Avenue into Grand Route St. John, and had negotiated about seven to eight .feet of the intersection, at which time, he observed the approach of plaintiff, about ten feet away and defendant “stepped on the gas” and blew his. horn to warn plaintiff in an effprt to avoid the impending collision. He.fixed the time of the accident at “7:25 or 7:30. R was dusk or dark.” Plaintiff, as set forth hereinabove, steered his vehicle to the left endeavoring to.avert the accident but collided with the right rear portion of the. automobile’s bumper. .
*760 Alvin Conner, a witness for defendant, testified that he had a complete view of the situs of the accident and that defendant executed a left turn and entered the intersection at a speed of about ten miles per hour, without coming to a stop; that the headlights on defendant’s car were burning, hut that the headlight on plaintiff’s Servi-Cycle was not burning; that there was ample space to the rear of the automobile for the motorbike to have passed behind it; that he has known defendant and his father for several years and that he was in the insurance business and “handled his (defendant’s) father’s life insurance.
Arthur J. Swain, also a witness for defendant, testified that he resided in a house very near to the intersection wherein this accident occurred and shortly after 7:00 P.M., he prepared to escort his two children across Esplanade Avenue and, he testified that he looked up Esplanade Avenue in the direction of Beauregard Square (City Park) a distance of about six or seven squares, and the direction from which plaintiff was approaching and did not observe plaintiff. He then looked across Esplanade Avenue and observed defendant approaching the intersection of Grand Route St. John, travelling near the neutral ground curbing, and saw him slow down and extend his left arm as a signal to indicate a left turn, and stated that defendant stopped and then proceeded into the intersection of Grand Route St. John where the .collision occurred. Swain also testified that he did not observe the Servi-Cycle until after the vehicles collided, but “if there had been a light (on the Servi-Cycle). I would have noticed, because I was on the verge of letting the- kids cross the street when this happened.”
In support of plaintiff’s version of the accident he produced one witness, Myron Greenleaf, who testified that when the accident occurred “it was just starting to turn 'dark”; that plaintiff was travelling at about twenty-five miles per hour and defendant had shifted gears and was travel-ling about seven 'or eight miles per hour and was “picking up speed” to about ten miles per hour when the collision occurred; that he did not know if the street lights or the light on the Servi-Cycle were burning.
There exists a dispute betwéen plaintiff and defendant relative to the exact time that the accident occurred, and whctlier the street lights were burning at the time of the accident. There is also a certificate in the record, obtained from the Custodian of the Records of the United States Weather Bureau at New Orleans, Louisiana, certifying that “according to computations made at this office based on data furnished by the United States Naval Observatory, the time of sunset in New Orleans, Louisiana, on May 22nd, 1948, was 6:51 P.M. Central Standard Time.”
The trial Judge concluded “from all the evidence” and we accept this finding of fact “that the accident happened about 7:15 P.M., and that the street lights were burning, because the police arrived at the scene of the accident about 7:30 P.M., about fifteen minutes after the accident, and the street lights were burning. The visibility was described by the witnesses between “dusk and dark.”
In order to determine, on the basis of the foregoing facts, if defendant is liable to plaintiff, it is first necessary to determine if defendant was guilty of negligence in the premises.
The trial judge concluded that the defendant was guilty of negligence in the premises and we subscribe to this view. In his written reasons for judgment he said:
“The City Ordinance (No. 13,702 C.C.S.) and the rules of the road require that a person who is about to make a left hand turn must come to a full stop, blow his horn, and look before entering the intersection. Defendant admits he did not stop, but continued to make the turn at about 3 miles an hour, though his witness (Conner) testified he entered the intersection without stopping at a speed of 10 miles per hour. He proceeded into the intersection about. 8 feet when he was attracted' to the oncoming Servi-Cycle only 10 feet away,, when he blew his horn for the first time. Had defendant- stopped, listened and looked up Esplanade Avenue, he could and should'. *761 have seen the Servi-Cycle approaching towards him, even though the Servi-Cycle’s headlight ivas not burning. The, Servi-Cycle was approaching the intersection and had the right-of-way. The fact that the Servi-Cycle was within 10 feet of defendant’s automobile when defendant’s automobile had proceeded only 8 feet into the intersection, indicates clearly that the Servi-Cycle could have been seen and heard, even without a headlight, had defendant stopped to look and listen before he entered the intersection.
“A driver making a left hand turn on a much travelled highway should exercise extra precaution, seek the opportune time to effect the turn, and look out for vehicles approaching from the opposite direction. Such vehicles, if they reach the intersection about the same time as the one about ready to turn, have the right-of-way over the latter. If the driver, when turning, disregards such right, he is guilty of gross negligence and is regarded as the proximate cause of the accident. Michiels v. Oser, La.App., 139 So. 497; Abel v. Gulf Refining Co., La.App., 143 So. 82; Jones v. Ouachita Baking Co., 14 La.App. 415, 128 So. 551; Erie v. Primos, La.App., 39 So. 2d 178; Gaines v. Standard Acc. Ins. Co., La.App., 32 So.2d 633; Lane v. Bourgeois, La.App., 28 So.2d 91; Scruggs v. V. Frank Lynn Co., La.App., 6 So.2d 86; Parker v. Employers’ Cas. Co., La.App., 152 So. 373.
“Under an ordinance requiring automobiles making left turn to yield the right-of-way to vehicle approaching from the opposite direction, motorist making left turn had duty to yield right-of-way to bicycle approaching from the opposite direction where bicycle, if not within intersection, was so close thereto as to constitute an immediate hazard. Justin v. Charley Cabs, La.App., 157 So. 283.
“The testimony of Chief Swain that he could look up Esplanade Avenue in the direction from which the Servi-Cycle was coming and could see Beauregard Square, 6 or 7 blocks away, indicates to me that the visibility was good. The approaching Servi-Cycle could and should have been seen at the .time by defendant. It is clear to me that when Chief Swain looked up Esplanade Avenue, before attempting to cross with his two children, he saw nothing coming, even though he should have seen plaintiff’s Servi-Cycle. He ' then turned to look across Esplanade Avenue and saw defendant’s automobile approaching the intersection. In the meantime, plaintiff’s Servi-Cycle reached the intersection and collided with defendant’s automobile, without Chief Swain ever seeing it until after the collision.
“When the law and the rules of the road require one to stop, look and listen, it means that one must see and hear those things that can be seen and heard. To stop, look and listen and not to see or hear those things that can be seen or heard, is not to stop, look and listen.
“Therefore, I must hold that defendant, in making the left turn into Grand Route St. John, without stopping and blowing his horn, and without looking and listening for traffic approaching on Esplanade Avenue, was guilty of primary negligence. See Adams v. Golson, La.App., 171 So. 403.” (Italics ours.)
Defendant, in the alternative, pleads “that plaintiff’s negligence in operating the motorbike at a fast rate of speed, after dark and without lights contributed to said accident and, accordingly, plaintiff should be denied recovery because of his contributory negligence.”
The -judge of the court a qua was of the opinion that the plaintiff was not contribu-torily negligent and we also subscribe to this view. He said:
“Had plaintiff’s headlight not been burning defendant still could have seen or heard plaintiff’s approach had he been keeping a proper lookout. The two streets intersect at a 30-degree angle. As defendant slowed down, or was about to make the left hand turn, the beam of his headlights was thrown in the direction from which the Servi-Cy-cle was coming. Had defendant stopped and looked, the beam of his headlights would • have spotted the on-coming Servi-Cycle. Had defendant stopped and listened, the-loud exhaust of the Servi-Cycle’s motor would also have made his approach known to defendant. Travelling on Es *762 planade Avenue was prefectly lawful for the Servi-Cycle, and a speed of 20 to 25 miles an hour was not excessive. That the Servi-Cycle ran head-on into the right rear bumper of the defendant’s automobile was an emergency created by defendant, which plaintiff tried' to avoid by swerving his Servi-Cycle to the left in an attempt to pass defendant’s automobile in the rear.
“In Adams v. Golson, supra, the Court in referring to a similar contention made that the lights on the motorcycle were not burning, said:
“ ‘Why, in turning her car at an angle towards the south as she said she did to make the turn, she did not see the motorcycle, is a matter which she has not satisfactorily explained. Her lights were burning and must have thrown a beam right in the path of the motorcycle at the time. She attempts to excuse her failure in this regard by explaining that the motorcycle had no light burning at the time. Even so, that would have been no reason for her not seeing the motorcycle he'rself.’
“Plaintiff had the right to assume that his passage would not be impeded by defendant at the intersection and that his right-of-way would not be challenged. Payne v. Prestridge, 16 La.App. 479, 133 So. 512.
“The same reasoning applies'here. The street lights were burning, Chief Swain could see 7 blocks up Esplanade Avenue, the Servi-Cycle was in the beam of defendant’s automobile headlights and the motor of the Servi-Cycle was making a loud, explosive sound. I must find that plaintiff was not guilty of contributory negligence.
“Defendant cites Hair v. Lee, La.App., 38 So.2d 543, as authority that he preempted the right-of-way since he entered the intersection first. It is not who entered first but who had'the right to entér first. Plaintiff had the right-of-way and was sufficiently close to the intersection to continue his right-of-way across the intersection. One about to make a left turn cannot violate the rules by rushing into an "intersection, and then claim pre-emption because he got there first. Had defendant observed the rules and kept a proper lookout, he would have seen that plaintiff was approaching and had the right to proceed. The cited case is inapposite here, because there defendant had lawfully, pre-empted the intersection. Here defendant took it by usurpation. One who rightfully enters an intersection first pre-empts it' and is entitled to sanctuary. One who wrongfully enters it first merely usurps it and does so at his own risk.”
See, also, Micheli v. Rheem Mfg. Co., 34 So.2d 294, decided by this Court March 1, 1948.
We have taken cognizance of the inadvertent error made by the trial judge in his written reasons for judgment concerning his appreciation of Conner’s and of Green-leaf’s testimony, as pointed out in defendant’s brief, to the effect that Conner actually testified-that he saw the Servi-Cycle approaching before the accident and saw that its lights were not burning, although the Court stated that he had testified that he had not seen the bike or its light; and that “plaintiff and his witness (Greenleaf) both testified positively that the headlight on the Servi-Cycle was burning”, whereas Green-leaf actually testified that he did not know whether the street lights or the light on the motorbike were burning.
We have carefully analyzed both the facts and the law applicable to this case and we conclude that this inadvertent error made by the trial judge did not in any manner militate against the correctness of his conclusions, and it will be noted in the above quotations from his reasons for judgment, that he concluded “had defendant stopped, listened and looked up Esplanade Avenue, he should have seen the Servi-Cycle approaching toward him even though the Servi-Cycle’s headlight was not burning” and further “had plaintiff’s headlight not been burning, defendant still could have seen and heard plaintiff approach had he been keeping a proper lookout. The two streets intersect at a 30 degree angle. As defendant slowed down or was about to make the left hand turn the beam of his headlights would have spotted the on-coming Servi-Cycle. Had defendant stopped and listened, the loud exhaust of the Servi-Cycle’s motor would also have made his *763 approach known to defendant.” It is, therefore, obvious that the trial judge had assumed arguendo, that the headlight on plaintiff’s Servi-Cycle was not burning which was a conclusion of fact most favorable to the defendant and, after mature consideration of this assumption, the trial judge was of the opinion that the defends ant was guilty of negligence in the premises and that the plaintiff was not guilty of contributory negligence.
The award by the trial court of $880.99 to Arthur J. Fuxan, Sr. for medical expenses incurred by him on behalf of his son and property damages incurred by the Servi-Cycle is eminently correct.
After a careful analysis of the personal injuries sustained by Henry J. Fuxan, we are also of the opinion that the award made by the trial judge of $2,225 is correct.
Henry J. Fuxan suffered a comminuted spiral fracture of the right middle third femur with minor fragments separated and displaced, together with severe shock, pain, suffering and mental anguish; and as a result of these injuries he was confined in the French Hospital from the date of the accident, May 22, 1948 to July 19, 1948, after which time he was permitted the use of a wheel chair and ultimately discharged on July 28, 1948.
For the reasons assigned 'the judgment appealed from is affirmed.
Affirmed.